**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**                    <u>**NOT FOR PUBLICATION**</u>

----------------------------------------------------------------------------- x

In re:

WANSDOWN PROPERTIES CORPORATION N.V.,

                              Debtor.

Chapter 11

Case No.:  19-13223 (DSJ)

----------------------------------------------------------------------------- x

WANSDOWN PROPERTIES CORPORATION N.V.,

        Plaintiff,

                v.

29 BEEKMAN CORP.,

        Defendant.

Adv. Pro. No. 20-01056 (DSJ)
(*Procedurally Consolidated with 20-01063*)

----------------------------------------------------------------------------- x

29 BEEKMAN CORP.,

        Plaintiff,

                v.

WANSDOWN PROPERTIES CORPORATION N.V., et al.,

        Defendants.

Adv. Pro. No. 20-01063 (DSJ)
(*Procedurally Consolidated with 20-01056*)

----------------------------------------------------------------------------- x

29 BEEKMAN CORP.,

        Plaintiff,

                v.

BLANK ROME LLP, et al.,

        Defendants.

Adv. Pro. No. 22-01075 (DSJ)

----------------------------------------------------------------------------- x

<u>**MEMORANDUM OPINION AND ORDER RESOLVING MOTIONS TO DISMISS AND MOTION TO AMEND**</u>

**A P P E A R A N C E S :**

**BLANK ROME LLP**
*Counsel for Wansdown*
1271 Avenue of the Americas
New York, NY 10020
By:    Ira L. Herman, Esq.

**BLANK ROME LLP**
*Counsel for Wansdown*
1825 Eye Street NW
Washington, DC 20006
By:    Jeffrey Rhodes, Esq.

**BLANK ROME LLP**
*Counsel for Blank Rome*
1271 Avenue of the Americas
New York, NY 10020
By:    Deborah Skakel, Esq.

**WOLPER LAW GROUP, LLC**
*Counsel for Gholam Reza Golsorkhi*
Paramus Plaza IV
12 Route 17 North, Suite 318
Paramus, NJ 07652
By:    Adam D. Wolper, Esq.

**THE SERBAGI LAW FIRM, P.C.**
*Counsel for 29 Beekman Corp.*
488 Madison Avenue, Suite 1120
New York, NY 10022
By:    Christopher Serbagi, Esq.

This memorandum opinion and order (this "**Decision**") decides (i) two motions to dismiss

the complaint (the "**1075 Complaint**") in an adversary proceeding numbered 22-01075 (the "**1075**

**Proceeding**"); (ii) a third motion to dismiss (together with the motions to dismiss the 1075

Complaint, the "**Motions to Dismiss**") an amended complaint (the "**1063 Complaint**") that was

originally filed in an adversary proceeding numbered 20-01063 (the "**1063 Proceeding**") but has

since been procedurally consolidated with another adversary proceeding numbered 20-01056 (the

"**1056 Proceeding**"); and (iii) a motion to amend the 1063 Complaint (the "**Motion to Amend**"

and, together with the Motions to Dismiss, the "**Motions**").

The plaintiff in the 1075 Proceeding and the 1063 Proceeding (and also the defendant in

the 1056 Proceeding) is 29 Beekman Corp. ("**29 Beekman**"), a creditor of Wansdown Properties

Corporation N.V. ("**Wansdown**"), the debtor in a confirmed voluntary Chapter 11 bankruptcy

2

case.  In the 1075 Proceeding, 29 Beekman is suing Blank Rome LLP ("**Blank Rome**") and Gholam Reza Golsorkhi ("**Golsorkhi**" and, together with Wansdown and Blank Rome, the "**Defendants**"), who are, respectively, the special litigation counsel and the sole managing director of Wansdown, for fraud, aiding and abetting fraud, and breach of contract in connection with a sale of real and personal property which had been approved by the Court but ultimately failed to close.  In the 1063 Proceeding (as procedurally consolidated with the 1056 Proceeding), 29 Beekman is suing Blank Rome and Wansdown for fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, and ill-defined claims for declaratory relief in connection with the same sale of real and personal property.[1]

The Motions to Dismiss seek dismissal of 29 Beekman's claims pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that they are barred as a matter of law by the doctrine of *res judicata* and that, even if they are not, 29 Beekman fails to state a claim upon which relief can be granted. The Motion to Amend seeks to remove Golsorkhi as a defendant, assert new factual allegations, make certain superficial edits to the existing causes of action, and assert new causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.  For the reasons that follow, the Motions to Dismiss are granted, and the Motion to Amend is denied.  The result is that the parties' dispute, which centers largely on whether 29 Beekman is entitled to the return of its $1.03 million deposit on a townhouse sale that did not close, can proceed to a timely resolution through the 1056 Proceeding without needless and costly additional litigation.

### BACKGROUND

---

[1] The original complaint in the 1063 Proceeding also named Golsorkhi as a defendant, but 29 Beekman later voluntarily dismissed him from the case.

## I.  Materials Considered in Deciding the Motions to Dismiss

Unless otherwise noted, for purposes of the Motions to Dismiss, the Court takes all well-pled factual allegations in the Complaints as true, but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court may consider "any written instrument attached to [the Complaint] as an exhibit or any statements or documents incorporated in it by reference" as well as any documents "integral" to the Complaint, *i.e.*, "where the complaint 'relies heavily upon [the document's] terms and effects.'"  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  The Court also may take judicial notice of public filings on its own docket.  *See In re 305 E. 61st St. Grp. LLC*, 644 B.R. 75, 80 n.6 (Bankr. S.D.N.Y. 2022).

## II.  Factual Background Pertinent to the Motions

### A.  The Parties Negotiated a Property Sale

In the summer of 2019, Wansdown owned certain real property located at 29 Beekman Place, New York, New York (Block 1361, Lot 121) that is improved by a steel superstructure designed as a one-family residence (the "**Property**").  [1075 ECF No. 1 at 20 of 75].[2]  Wansdown lacked the funds to insure the Property or to "repair cited violations," and a judgment against Wansdown in the amount of more than $3 million inclusive of interest in connection with the

---

[2] Unless otherwise specified, references to the Case Management/Electronic Case Filing ("**ECF**") docket are to the above-captioned cases.  Citations to the ECF docket in the 1075 Proceeding, 1063 Proceeding, and 1056 Proceeding are referred to, respectively, as "1075 ECF No. __," "1063 ECF No. __," and "1056 ECF No. __."  Citations to the ECF docket in the main bankruptcy case, 19-13223 (DSJ), are referred to as "Main ECF No. __."  Whenever possible, the Court will endeavor to cite to a document's underlying pagination, and such citations will take the form "ECF No. __ at __."  When that is not possible—for example, if a single docket entry contains multiple documents, each with its own separate underlying pagination—the Court will cite to the page number in the ECF-stamped banner at the top of the page, and such citations will take the form "ECF No. __ at __ of __."  The Court may also cite to other subdivisions of a document, such as a paragraph or section number, as appropriate.  Additionally, in the interest of readability, and because there is substantial factual overlap between the Complaints, except as otherwise noted, this Decision provides citations to factual allegations contained in the 1075 Complaint without providing parallel citations to the 1063 Complaint.

asserted pension of a former Wansdown employee (the "**Pension Judgment**") resulted in the scheduling of a sheriff's sale of the Property to occur on October 9, 2019 (the "**Sheriff's Sale**").[3] [1075 ECF No. 1 at 21 of 75]. To avoid the Sheriff's Sale, Golsorkhi asked a friend to find a buyer for the Property, and that friend connected Golsorkhi with 29 Beekman. [1075 ECF No. 1 at 21–22 of 75]. 29 Beekman negotiated the terms of a sale of the Property (the "**Property Sale**") with Lawrence Flick ("**Flick**"), a partner at Blank Rome who, "through his wife, had a decades-long personal relationship with Golsorkhi." [1075 ECF No. 1 at 22 of 75].

Because 29 Beekman "was drawn into the [Property Sale] predominantly as a favor to the people involved in it," 29 Beekman "was inflexible in paying no more than the minimum amount necessary to satisfy all claims in bankruptcy against Wansdown" and "would purchase only so long as the closing could be effectuated in the near term and without delay." [1075 ECF No. 1 at 21 of 75]. Therefore, the parties "specifically negotiated" a $10.3 million purchase price because it was "the minimum amount that would result in proceeds sufficient to satisfy all liabilities of Wansdown." [1075 ECF No. 1 at 22 of 75]. "Satisfaction of all claims in bankruptcy was critical for 29 Beekman to avoid potential obstacles, objections[,] and/or delays to closing." [1075 ECF No. 1 at 22 of 75]. Relying on "Wansdown's representations, 29 Beekman acceded to Wansdown's demand and did not seek a standard mortgage contingency customary in the purchase of residential properties." [1075 ECF No. 1 at 22 of 75].

As negotiations continued in September 2019, 29 Beekman indicated that it "wanted to close immediately," but Blank Rome "inserted draft provisions in the draft Contract contemplating a bankruptcy filing immediately after execution of the Contract with a contemplated closing in the end of January." [1075 ECF No. 1 at 22 of 75]. 29 Beekman initially "objected to such provisions

---

[3] Throughout the Complaint, 29 Beekman refers to certain events as occurring in 2020 even though the rest of the Complaint and the documents on which it relies make clear that those events occurred in 2019. This Decision refers to the correct 2019 dates even when the Complaint mistakenly says "2020."

on the ground that 29 Beekman did not want to have unproductive funds tied up for almost four months until the end of January," but Flick "insisted that the Property [S]ale be under a bankruptcy plan" because he believed Wansdown had a better chance of successfully contesting the Pension Judgment in an adversary proceeding than in a state court proceeding.  [1075 ECF No. 1 at 23 of 75].  "At first, 29 Beekman continued to object" and "pressed for an immediate closing," but during three telephone calls—one on September 23, 2019, and two on September 24, 2019—Flick (i) "informed 29 Beekman that the drafts of the bankruptcy plan and disclosure statement were already well underway and would be filed shortly," (ii) "represented that because the price was set to be sufficient to satisfy all claims, no party would object to the plan, and hence such a plan could be approved quickly and with almost complete certainty," and (iii) "argued that a sale under such a plan would exempt 29 Beekman from the payment of the NY City and NY State 'mansion tax,' which would otherwise total $334,750, which amount would compensate 29 Beekman for the additional three or four months of delay."  [1075 ECF No. 1 at 23 of 75].

Relying on "Wansdown's and Blank Rome's representations," 29 Beekman "acceded to Wansdown's wishes, but insisted on inclusion of several provisions to protect 29 Beekman, namely that 29 Beekman would have forty-five (45) days after approval of the bankruptcy plan and the sale to close," "that 29 Beekman would be relieved of all obligation to close if that closing date did not occur on or before January 31, 2020," and "that such date could be extended only by 29 Beekman."  [1075 ECF No. 1 at 23–24 of 75].

B.    The Parties Reached an Agreement and Executed a Contract

The parties ultimately came to an agreement and memorialized the terms of the Property Sale in a contract signed on September 25, 2019 (the "**Sale Contract**").  [1075 ECF No. 1 at 27 of 75].  Separately, 29 Beekman negotiated with Golsorkhi "for the sale of certain furniture for a purchase price of $15,000."  [1075 ECF No. 1 at 27 of 75].  The terms of this sale were

6

memorialized in a letter agreement that was also signed on September 25, 2019 (the "**Letter Agreement**"). [1075 ECF No. 1 at 27 of 75]. Because the precise terms of the Sale Contract and Letter Agreement are critical to understanding the nature of 29 Beekman's claims, this Decision quotes extensively from those documents rather than attempting to summarize or characterize them.

Section 51(a) of the Sale Contract contemplates that the Property Sale would be effected pursuant to a confirmed bankruptcy plan or, "if not possible," through a sale under 11 U.S.C. § 363:

> Purchaser acknowledges that the Premises is owned by Seller, and Seller will file a voluntary chapter 11 case pursuant to the Bankruptcy Code and that consummation of the transactions contemplated herein is subject to Seller's receipt of requisite authority under the Bankruptcy Code pursuant to, among other things, the entry of an order confirming the Plan, or if not possible, then approving a 363 Sale, which order shall contain provisions (i) approving the sale of the Property by Seller to Purchaser, . . . (iii) reserving to the Bankruptcy Court jurisdiction to enforce all orders approving and/or matters relating to the sale; (iv) providing that that [sic] the Seller and Purchaser are entitled to the relief set forth in Section 1146(a) of the Bankruptcy Code with respect to the Sale if pursuant to a Plan [and] (v) findings [sic] that (1) Purchaser has acted in 'good faith' within the meaning of section 363(m) of the Bankruptcy Code . . . ; (2) adequate notice was provided for the sale pursuant to the applicable laws and rules; . . . (5) the sale has been conducted on an arms-length basis; . . . (8) the sale is being effected pursuant to and in conjunction with the Plan, if one is being confirmed, and, therefore, Purchaser is entitled to the protections and exemptions provided in and pursuant to Section 1146(a) of the Bankruptcy Code; . . . . [P]rovided, however, if Seller does not file such proceeding or it is dismissed for any reason, then this Contract shall remain a binding obligation of Seller to sell and Purchaser to buy the Premises as set forth herein apart from the contemplated Bankruptcy Court proceeding.

[Main ECF No. 38 at 49 of 54].

Section 40 of the Sale Contract provides for the payment of various taxes in connection with the Property Sale, including the so-called "mansion tax":

> [I]f the Premises are sold hereunder other [than] pursuant to the contemplated Bankruptcy Court order, then: At Closing, Seller and Purchaser shall deliver a prepared and fully executed (i) NYC Real Property Transfer Tax Return and Seller shall deliver a bank check, in payment of the tax or filing fee owed thereon, (ii)

Combined Real Estate Transfer Tax Return, Credit Line Mortgage Certificate, and Certification of Exemption from Payment of Estimated Personal Income Tax (i.e., TP-584 Form) and Seller shall deliver a bank check, in payment of the tax or filing fee owed thereon except that Purchaser shall be responsible for the NYS and NYC "Mansion Tax.", [sic] and (iii) NYS Real Property Transfer Report (i.e., RP-5217). Seller and Purchaser shall pay promptly any tax due and interest and penalties, if any, thereon, as required under this Section 40, and each shall indemnify the other therefrom and from any cost, claim and expense (including reasonable attorneys' fees relating thereto or to the enforcement of this indemnity) incurred in connection therewith.  The obligations under this paragraph 40 shall survive Closing.

[Main ECF No. 38 at 46–47 of 54].

Section 13(a) of the Sale Contract provides that "[t]his contract and Purchaser's obligation to purchase the Premises are also subject to, and conditioned upon, the fulfillment of the following conditions precedent: (i) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract."  [Main ECF No. 38 at 36 of 54].  These representations include the following representation contained in Section 51(b) of the Sale Contract (the "**Section 51(b) Representation**"), which is at the heart of this case:

Seller represents that the net proceeds of a sale under this Contract would be sufficient to satisfy all claims against Seller and, as reasonably projected, Seller's contemplated estate in bankruptcy, and Seller shall present the Contract for approval by the Bankruptcy Court in such context.

[Main ECF No. 38 at 49–50 of 54].

Section 33 of the Sale Contract provides certain contingencies in the event that a condition of Section 13 was not satisfied:

If condition [sic] in paragraph 13 of the Contract or a representation in paragraph 9 of the Contract shall not be satisfied or true, as applicable, at Closing, then, at Seller or Purchaser's option: the Closing shall be adjourned for such reasonable period for Seller to remedy any such defect; or the Closing shall be effected and the purchase price under the Contract reduced by the reasonable cost of remedying any such defect.

[Main ECF No. 38 at 45 of 54].

Section 52(d) of the Sale Contract provides the following additional condition to closing:

8

> In addition to the conditions set forth in Paragraph 13 of this Contract, this Contract, Purchaser's obligation to purchase the Premises, and Seller's obligation to convey the Premises in accordance with this Contract are also subject to, and conditioned upon, the fulfillment of the following conditions precedent: . . . (d) The Closing shall occur within forty-five (45) days after the entry of the Confirmation Order [i.e., the order confirming a Chapter 11 plan] but no later than January 31, 2020 (such January 31, 2020 date, as extended hereunder, the 'Final Date'); provided, however, that Purchaser may extend such Final Date, on one or more occasions, until the earlier of 30 days after the entry of the Confirmation Order or January 31, 2021 by notice to Seller prior to the passing of the then effective Final Date.

[Main ECF No. 38 at 50–51 of 54].

Section 52(e) of the Sale Contract similarly provides the following closing deadline:

> The closing of the transactions contemplated herein ('Closing Date') shall take place no later than the forty-five (45) days after the Confirmation Order which becomes final and non-appealable, . . . provided, however, that in no event shall the Closing take place later than January 31, 2020, subject to extension of the Final Date.

[Main ECF No. 38 at 50 of 54].

In the event that Wansdown sold the Property to another buyer at a higher price, Section 51(b)—the same paragraph that contains the sufficiency-of-proceeds representation—contains the following liquidated damages provision (the "**Liquidated Damages Provision**"):

> If, despite Seller's petition described herein, the Bankruptcy Court orders an auction or if any higher offer is made that the Bankruptcy Court accepts, or if the Bankruptcy Court proceeding is dismissed without approval of the sale under this Contract, then, Seller and Purchaser acknowledge, Purchaser will suffer damages that will be extremely difficult to calculate, and so Purchaser shall be entitled to receive, as liquidated damages and not as a penalty, which Seller and Purchaser acknowledge, is a reasonable estimate of such damages from any disposition in any manner of the Premises other than to Purchaser or Purchaser's assignee (except on a default by Purchaser not cured following notice), equal to: US$500,000, plus 80% of all gross proceeds of such disposition(s) that are in excess of US$10,800,000 (for clarity.. [sic] This Section 51(b) shall survive termination of this Contract.

[Main ECF No. 38 at 49–50 of 54].

Finally, the Letter Agreement between 29 Beekman and Golsorkhi in his individual capacity provides as follows:

In connection with the [Sale Contract] (the 'Contract'), you [29 Beekman] shall purchase, and I [Golsorkhi] shall sell, the mirrors and chandeliers in the Premises (defined in the Contract), which mirrors and chandeliers are owned by me, for a purchase price of $15,000, which amount shall be placed in escrow with your counsel, who shall acknowledge receipt of same to you and to me upon receipt. Such purchase shall be memorialized by a customary bill of sale at closing under the Contract, and the escrowed purchase price shall be paid at such closing. You will be responsible for any sales tax on such purchase. The provisions of the Contract are incorporated herein by reference.

[Main ECF No. 38 at 54 of 54].

      C.      <u>The Parties Proceeded Pursuant to the Sale Contract</u>

On October 7, 2019, pursuant to the Sale Contract, 29 Beekman made a down payment of $1,030,000.00, to be held by Blank Rome in escrow. [1075 ECF No. 1 at 27 of 75].

On October 8, 2019, Wansdown voluntarily filed its Chapter 11 bankruptcy petition. [1075 ECF No. 1 at 27 of 75; *see generally* Main ECF No. 1]. The same day, and pursuant to Local Rule 1007-2, Golsorkhi filed an affidavit which stated, *inter alia*, that "[t]he closing of the transactions contemplated in the [Sale Contract] are scheduled to take place no later than forty-five (45) days after the entry of an order confirming a chapter 11 plan" (the "**45-Day Representation**"). [1075 ECF No. 1 at 27 of 75; Main ECF No. 5 at 4 of 5]. The Complaint alleges, "[o]n information and belief," that Golsorkhi's statement was made "in part to induce 29 Beekman to continue its cooperation with the sale of the Property and to advance funds for its upkeep." [1075 ECF No. 1 at 27–28 of 75]. As a result of the bankruptcy filing and the resulting automatic stay, the Sheriff's Sale was cancelled. [1075 ECF No. 1 at 28 of 75].

At some point between October 8, 2019 and October 10, 2019, Wansdown requested 29 Beekman "to advance the purchase price under the Letter Agreement as a pre-payment to relieve pressure on Wansdown to pay insurance premiums on the [P]roperty." [1075 ECF No. 1 at 28 of 75]. On October 10, 2019, 29 Beekman agreed to Wansdown's request and memorialized its

agreement in a letter amendment to the Letter Agreement (the "**Letter Amendment**"). [1075 ECF No. 1 at 28 of 75].

On December 2, 2019, Wansdown filed its first Chapter 11 Plan [Main ECF No. 26], which was re-filed as amended on December 9, 2019 [Main ECF No. 30] (the "**First Plan**"), which provided for the completion of the Property Sale and projected full payment to all creditors except for a claim filed by Golsorkhi, who agreed to subordinate his asserted claim to the payment of all other creditors. [*See generally* Main ECF No. 30; *see also* Main ECF No. 31 at 5–6 (amended disclosure statement indicating Golsorkhi's agreement to subordinate his claims)]. A confirmation hearing on the First Plan was scheduled for January 14, 2020. [Main ECF No. 32 at 2].

D.     A Claim Filing Derailed the First Plan and the Property Sale

On December 31, 2019, Wansdown's sole shareholder, Pelmadulla Stifung, Vaduz ("**Pelmadulla**"), filed a proof of claim against Wansdown in the amount of $3,242,941.19 (the "**Pelmadulla Claim**"). [1075 ECF No. 1 at 28 of 75]. Blank Rome had represented Pelmadulla in New York state court litigation from "as early as 2018" until at least December 6, 2019 [1075 ECF No. 1 at 36–37 of 75], and, unbeknownst to 29 Beekman, certain communications in Blank Rome's possession (the "**Pelmadulla Emails**") "indicat[ed] that Pelmadulla had in fact notified Blank Rome expressly of the [Pelmadulla Claim] prior to Pelmadulla's filing the claim." [1075 ECF No. 1 at 38–41 of 75]. Additionally, "[l]ong prior to the execution of the [Sale] Contract," Wansdown and Golsorkhi "always knew about" certain loans from Pelmadulla to Wansdown, which formed the basis of the Pelmadulla Claim. [1075 ECF No. 1 at 39–40 of 75, 44 of 75, 46 of 75]. The filing of the Pelmadulla Claim "blatantly exposed the falsity of" the Section 51(b) Representation because, given the amount of the Pelmadulla Claim, "the proceeds of a sale under the [Sale] Contract could clearly not satisfy all claims." [1075 ECF No. 1 at 28 of 75, 30 of 75]. Because the First Plan was premised on fully repaying all creditors other than Golsorkhi,

11

Wansdown would have to file a new plan if it still sought to obtain a confirmed plan.  [1075 ECF

No. 1 at 30 of 75].

On January 7, 2020, Wansdown filed a motion for approval of the Sale Contract and the

Letter Agreement pursuant to 11 U.S.C. §§ 363 and 365 (the "**Sale Motion**").  [*See generally* Main

ECF No. 38].  The Sale Motion attached a proposed order that, if entered, would approve the Sale

Contract; the proposed order included the following finding:

> The sale of the Property pursuant to the Purchase Agreement [i.e., the Sale
> Contract] and this Order was negotiated by the Debtor and the Purchaser at arm's-
> length, without collusion or fraud, and in good faith within the meaning [of] section
> 363(m) of the Bankruptcy Code.  None of the Debtor, the Purchaser, their
> respective affiliates, or their representatives has engaged in any conduct that would
> cause or permit sale of the Property or the Purchase Agreement to be avoided under
> section 363(n) of the Bankruptcy Code, or has acted in any improper or collusive
> manner with any person.  The terms and conditions of the sale transaction and the
> Purchase Agreement, including without limitation, the consideration provided
> therein, are fair and reasonable and shall not be avoided under section 363(n) of the
> Bankruptcy Code.

[Main ECF No. 38 at 19 of 54]

On some unspecified date on or prior to January 15, 2020, Wansdown requested a 45-day

extension of the January 31, 2020 "Final Date" defined in Section 52(d) of the Sale Contract.  [*See*

1075 ECF No. 10-2 at 4 of 6].  On some unspecified date after that, but still on or prior to January

15, 2020, 29 Beekman allegedly "objected to" the Sale Motion and notified Wansdown that 29

Beekman considered Wansdown to be in default of the Sale Contract [1075 ECF No. 1 at 32 of

75], but 29 Beekman did not file a formal objection with the Court.  On some unspecified date

after that, but still on or prior to January 15, 2020, 29 Beekman informed Wansdown that it would

effectuate the Property Sale under § 363 instead of pursuant to a confirmed bankruptcy plan only

if Wansdown would pay the $334,750 mansion tax.  [1075 ECF No. 1 at 32 of 75; 1075 ECF No.

10-2 at 5 of 6].  While negotiating the terms of a draft proposed order to grant the Sale Motion, 29

Beekman added a provision requiring Wansdown to pay the mansion tax; Wansdown initially

accepted this addition to the draft but, "[s]hortly" thereafter, rejected the addition and refused to pay the mansion tax.  [1075 ECF No. 1 at 32 of 75].

On January 14, 2020, the Court held a hearing on confirmation of the First Plan and on the Sale Motion (the "**January 14 Hearing**").  [Main ECF No. 58].  29 Beekman appeared at the January 14 Hearing, and Blank Rome appeared as special counsel for Wansdown.  [Main ECF No. 58 at 1–3, 9–14, 18].  During the hearing, Judge Bernstein repeatedly noted that it would not be possible to confirm the First Plan or a new plan by January 31, 2020.  [Main ECF No. 58 at 5:6–12, 8:13–14, 17:21–22, 19:25–20:2].  Counsel for 29 Beekman noted at the hearing that he "represent[ed] the objecting party," that the parties were "very close" and had "reached a tentative settlement," that 29 Beekman "would waive [its] objection to the approval of the sale, subject to that settlement, and that "if [the] settlement falls apart, [29 Beekman] can't waive [its] objection," [Main ECF No. 58 at 9:21–10:4, 18:7–11], but he did not specify what the "objection" was, did raise any formal objection, whether concerning the Section 51(b) Representation—that is, the representation that the sale proceeds would cover claims—or otherwise, and did not raise the issue of the Section 51(b) Representation [*see generally id.*].

On January 15, 2020, 29 Beekman sent a letter to Wansdown which provided, in relevant part, as follows:

> Buyer understands that the new claims and objections [i.e., the Pelmadulla Claim] may not have been anticipated when the contract of sale was signed, but these claims and objections were not related in any way to buyer, and they have not made a bankruptcy plan 'not possible,' rather they have made it not convenient or not desirable for seller.  Seller has conceded that a plan is still possible through its express request for a 45-day extension of the January 31, 2020 deadline in order to refile and have adopted a bankruptcy plan.  Buyer even previously disavowed its intention to purchaser [sic] under such a plan.  Such a plan, however, would require noting that buyer could opt out if not satisfied with the plan or the confirmation order, and the proposed sale would likely have to have a fallback, such as an auction sale, so we understand that proceeding with such a plan would be undesirable, but certainly far from "not possible."  Therefore, the buyer is not in a position in which it must now accept a pre-plan "363" sale because a plan remains possible.

13

We, nonetheless, did try to accommodate the seller's request to switch tracks to a 363 sale on a voluntary basis, and we worked with you to achieve that end. One of several conditions for buyer's acquiescence on a voluntary basis to a 363 sale was that it not suffer to have to pay the mansion tax. This point was included in our first round of comments on the draft sale order last week . . . . This change was "accepted" along with other changes in terms of the sale . . . , but now seller has repudiated the "acceptance" of just that one "accepted" condition, i.e., the mansion tax assumption.

The buyer stands by its obligations under the contract of sale if a plan is confirmed by a confirmation order reasonably acceptable to buyer that is final and non-appealable in time for a closing by the current deadline, January 31, 2020. If not, then buyer's position under the contract of sale would remain as a contract party with an option to buy the property under a plan or a 363 sale in buyer's sole discretion. That position would be exactly what buyer expressly negotiated to get in this scenario of unforeseen setbacks. Buyer, however, does not want to exert that right because its exertion would further complicate the bankruptcy and might well result in no benefit to buyer and significant impediments to seller. Also, buyer has directed its preference that I not testify about the facts of the negotiation, mainly because I was not part of the negotiation of the critical $10,300,000 purchase price.

So, although the buyer is not willing to extend the January 31, 2020 deadline, the buyer will elect to terminate the contract of sale if a bankruptcy plan is not final and non-appealable in time for a closing to occur by the current deadline, January 31, 2020. Buyer will await that outcome, but is withdrawing from any further voluntary participation in a pre-plan 363 sale.

[1075 ECF No. 10-2 at 4–5 of 6].

On January 16, 2020, the Court held a second hearing on the Sale Motion (the "**January 16 Hearing**" and, together with the January 14 Hearing, the "**Sale Hearings**"). [Main ECF No. 57]. Blank Rome (as special counsel for Wansdown) and 29 Beekman appeared at this hearing as well, and Golsorkhi testified as a witness. [Main ECF No. 57 at 1, 6–43, 52–54]. Again, 29 Beekman did not raise any issues regarding the Section 51(b) Representation or raise an objection, and 29 Beekman did not question Golsorkhi about the Section 51(b) Representation or any other topic. [*See generally* Main ECF No. 57]. The same day, following the January 16 Hearing, the Court entered an order granting the Sale Motion and approving the Sale Contract (the "**Sale**

Order"). [Main ECF No. 55]. The Sale Order included the proposed sale order's finding quoted above. [Main ECF No. 55 at 2].

On January 29, 2020, 29 Beekman extended the Final Date to February 10, 2020, "but for the expressed purposes of providing Wansdown additional time to reconsider its refusal to proceed with a bankruptcy plan and/or providing time for a potential buyer who, 29 Beekman was informed, was in conversation[s] with a broker marketing the Property to become an actual buyer." [1075 ECF No. 1 at 33 of 75]. On February 10, 2020, "in accordance with Wansdown's counsel's repeated requests to extend the Final Date for at least 60 days to give Wansdown time to file an amended Bankruptcy plan, 29 Beekman sent to Wansdown a notice purporting to extend the 'Final Date' under the Contract to May 10, 2020." [1075 ECF No. 1 at 33 of 75]. On February 18, 2020, "Blank Rome, as counsel for Wansdown, sent a letter rejecting the extension of the Final Date to May 10, 2020 and purporting to notify 29 Beekman of its default under the Contract in failing to previously close." [1075 ECF No. 1 at 33 of 75]. On February 24, 2020, 29 Beekman demanded that Wansdown return the down payment which 29 Beekman had paid under the Sale Contract. [1075 ECF No. 1 at 34 of 75].

E.    Litigation Ensued

On February 26, 2020, Wansdown commenced the 1056 Proceeding against 29 Beekman, claiming that 29 Beekman had breached the Sale Contract and seeking a declaratory judgment that Wansdown was entitled to retain the down payment thereunder. [1056 ECF No. 1]. On March 13, 2020, 29 Beekman filed a motion to dismiss the 1056 Proceeding. [1056 ECF No. 6]. On March 19, 2020, while 29 Beekman's motion to dismiss was pending, Wansdown requested leave to file a motion for summary judgment. [1056 ECF No. 7].

On March 25, 2020, 29 Beekman commenced the 1063 Proceeding against Wansdown, Blank Rome, and Golsorkhi, seeking damages for fraud, damages for breach of the Sale Contract, and declaratory relief in connection with the Property Sale.  [1063 ECF No. 1].

On April 8, 2020, Wansdown moved for summary judgment in the 1056 Proceeding.  [1056 ECF No. 12].  On April 22, 2020, Wansdown objected to the Pelmadulla Claim.  [Main ECF No. 89; 1075 ECF No. 1 at 34 of 75].  Thereafter, Pelmadulla agreed to reduce its claim to $250,000. [Main ECF No. 163 at 2].

On April 23, 2020, 29 Beekman filed its Amended Complaint in the 1063 Proceeding, which is the currently operative 1063 Complaint.  [1063 ECF No. 3].

On May 1, 2020, the Court entered an Order procedurally consolidating the 1063 Proceeding with the 1056 Proceeding such that any future filings in the 1063 Proceeding would instead be filed in the 1056 Proceeding.  [1063 ECF No. 4].

On May 7, 2020, 29 Beekman cross-moved for summary judgment in the 1056 Proceeding. [1056 ECF No. 27].

F.      Wansdown Filed a New Plan and Sold the Property to Another Buyer

By motion dated June 5, 2020, Wansdown "announced that it had 'negotiated and entered into[']" a new contract to sell the Property to a new buyer for $11,500,000, "subject to higher and better offers pursuant to bidding procedures that are approved by the Court" (the "**Second Sale Contract**").  [1075 ECF No. 1 at 35–36 of 75; *see generally* Main ECF No. 102].

On June 9, 2020, Wansdown filed its Second Amended Chapter 11 Plan (the "**Second Plan**"), which provided for approval of the Second Sale Contract.  [*See generally* Main ECF No. 105].  The Second Plan also provided that, "[a]s part of the Sale Transaction under the Plan [i.e., the Second Sale Contract], and in order to ensure consummation of the Plan, the Confirmation Order shall contain [certain] findings of fact and conclusions of law," including "that no cause of

16

action exists . . . with respect to the sale of the Property to the Purchaser." [Main ECF No. 105 at 13]. The Second Plan also provided that, with certain exceptions not applicable here, "[o]n the Effective Date . . . each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code." [Main ECF No. 105 at 18]. On June 16, 2020, Wansdown filed its Revised Second Amended Chapter 11 Plan (the "**Revised Second Plan**"), which contained the same language. [Main ECF No. 113 at 13, 18]. The same day, the Court ordered that any objections to the Revised Second Plan be filed, in writing, no later than July 9, 2020. [Main ECF No. 115 at 3]. 29 Beekman did not file an objection.

On July 14, 2020, Wansdown filed a proposed order confirming the Revised Second Plan, which, in addition to "approv[ing] and confirm[ing]" the language of the Revised Second Plan, provided that "[t]he transfer of the Property to the Purchaser will relieve the Debtor from any liability occurring, arising from, or relating to the Property after the transfer." [Main ECF No. 127 at 13, 15]. The proposed confirmation order also included the following findings: Wansdown "ha[d] complied with applicable provisions of the Bankruptcy Code"; based on the Court's "examin[ation of] the totality of the circumstances surrounding the filing of the Chapter 11 Case and the formulation of the Plan," Wansdown "ha[d] proposed the Plan in good faith and not by any means forbidden by law"; "[t]he Chapter 11 Case was filed with the purpose of reorganizing the Debtor, and the Plan was the result of arms'-length negotiations and reflect[ed] a settlement of the disputed issues between the Debtor and its creditors"; and "[a] reasonable opportunity to object or be heard with respect to the sale of the Property under the Plan ha[d] been afforded to all interested persons and entities." [Main ECF No. 127 at 5, 8].

On July 16, 2020, the Court held a confirmation hearing on the Revised Second Plan (the "**Confirmation Hearing**"). [Main ECF No. 156]. 29 Beekman did not appear at the hearing. [*See*

*generally id.*].  The same day, following the Confirmation Hearing, the Court entered an order

approving the Revised Second Plan (the "**Confirmation Order**").  [Main ECF Nos. 130, 136

(restated)].  The Confirmation Order contained the proposed confirmation order's provisions and

findings quoted above.  [*Id.* at 5, 8, 14–15].  On August 5, 2020, pursuant to the Revised Second

Plan and the Second Sale Contract, Wansdown sold the Property for $11.5 million.  [1075 ECF

No. 1 at 36 of 75].

G.    Litigation Continued

On July 24, 2020, in response to 29 Beekman's discovery requests, Blank Rome produced

the Pelmadulla Emails to 29 Beekman.  [1075 ECF No. 12 at 25].

On July 27, 2020, 29 Beekman filed a letter in the 1056 Proceeding informing the Court of

the Pelmadulla Emails, which the letter described as "emails that further reveal that Pelmadulla

put Debtor on notice that Pelmadulla was a creditor because of outstanding loans it made to

Debtor."  [1056 ECF No. 55 at 1].

On October 5, 2020, the Court denied both cross-motions for summary judgment in the

1056 Proceeding (the "**Summary Judgment Decision**").  [1056 ECF No. 60].  On October 19,

2020, 29 Beekman filed a motion for reconsideration of the Court's denial of its summary

judgment motion.  [1056 ECF No. 62].

At some unspecified point prior to November 3, 2020, "29 Beekman requested Wansdown

to ensure that it would pay to 29 Beekman the liquidated damages set forth in the [Liquidated

Damages Provision], namely US $500,000, plus 80% of all gross proceeds of such disposition(s)

that are in excess of US$10,800,000."  [1075 ECF No. 1 at 49 of 75].  Later, but still prior to

November 3, 2020, Wansdown refused to pay.  [1075 ECF No. 1 at 49 of 75].

On November 3, 2020, 29 Beekman commenced an action against Blank Rome and

Golsorkhi in New York state court, alleging claims of fraud, aiding and abetting fraud, and breach

18

of contract.  [1075 ECF No. 1 at 18–51 of 75].  On April 5, 2022, that action was removed to this

Court, and it has since proceeded in this Court as the 1075 Proceeding.  [*See generally* 1075

Proceeding docket sheet].

On January 6, 2021, the Court denied in part and granted in part 29 Beekman's motion for

reconsideration of its denial of summary judgment (the "**Reconsideration Decision**").  [1056 ECF

No. 78].  On February 19, 2021, following a round of supplemental briefing, the Court issued a

decision that, *inter alia*, indicated that the only issues still to be tried in the 1056 Proceeding were

(and are) "what the parties intended when they agreed that the sale proceeds would be sufficient

to satisfy the claims 'as reasonably projected,' and whether the Debtor would have been able to

satisfy that condition precedent at the time of the scheduled Closing.'"  [1056 ECF No. 82 at 9].

On May 27, 2022, 29 Beekman filed its Motion to Amend the 1063 Complaint [1056 ECF

No. 100] along with, *inter alia*, a copy of its Proposed Second Amended Complaint (the "**1063

Proposed SAC**") [1056 ECF No. 100-1] and a redline comparing the 1063 Proposed SAC against

the 1063 Complaint [1056 ECF No. 100-2].

## III.   Arguments

### A.   The Motions to Dismiss

There is significant overlap between the Complaints, but they are not identical.  The 1075

Complaint contains five causes of action.  The first and fourth causes of action are against Blank

Rome and Golosrkhi, respectively, for fraud based on the allegedly false Section 51(b)

Representation; the second cause of action is against Blank Rome for aiding and abetting

Wansdown's "fraud and fraudulent concealment," but it is unclear precisely what alleged

misstatements or omissions form the basis for this cause of action; the third cause of action is

against both Blank Rome and Golsorkhi, as asserted alter egos of Wansdown, for breach of the

Liquidated Damages Provision of the Sale Contract; and the fifth cause of action is against

Golsorkhi for breach of the Letter Agreement and/or Letter Amendment.  [1075 ECF No. 1 at 47–51].

The 1063 Complaint contains four numbered causes of action and two unnumbered "claims."  The first and second causes of action are against Wansdown for breach of contract and fraud, respectively, based on the allegedly false Section 51(b) Representation; the third cause of action is against Wansdown for breach of the implied covenant of good faith and fair dealing based on Wansdown's alleged insistence on effecting the Property Sale through § 363 and refusal to pay the mansion tax; and the fourth "cause of action against Wansdown" is actually a request for a declaratory judgment that Wansdown is bound by Golsorkhi's 45-Day Representation.  [1063 ECF No. 3 at 17–20].  The first unnumbered "claim" was against Golsorkhi for fraud in connection with the allegedly false Section 51(b) Representation, but it has been voluntarily dismissed [1056 ECF No. 90] and therefore is not addressed by this Decision; and the second unnumbered "claim[]"—titled "Expiration of Closing Period and Return of Deposit and Advance Purchase Price Payment under the [Letter] Agreement"—purports to be "against all defendants," but it appears to be merely a prayer for relief seeking "a judgment declaring and finding that Buyer is entitled to receive the return of Buyer's down payment deposit with interest accrued thereon and to receive the return of Buyer's advance payment under the [Letter] Agreement with interest accrued thereon, and directing the Escrow Agent [i.e., Blank Rome] to release the down payment deposit under the Contract to buyer with all accrued interest thereon."  [1063 ECF No. 3 at 21–22].

Blank Rome and Golsorkhi filed separate motions to dismiss the 1075 Complaint [1075 ECF Nos. 9, 10], and Blank Rome and Wansdown filed one joint motion to dismiss the 1063 Complaint [1056 ECF No. 111].  All three Defendants assert two primary grounds for dismissal: *first*, that the Sale Order and the Confirmation Order have *res judicata* effect and therefore bar 29 Beekman's claims, and *second* under Fed. R. Civ. P. 12(b)(6), that 29 Beekman has failed to state

a claim for which relief can be granted.  [*See* 1075 ECF No. 10-1 at 12–33; 1075 ECF No. 9-1 at

6–11;1056 ECF No. 111-1 at 16–35].  29 Beekman filed one brief in each of the 1075 and 1056

Proceedings opposing the respective Motions to Dismiss in each proceeding, arguing that (i) the

Court had already rejected the *res judicata* argument in the Summary Judgment Decision, the Sale

Order requires Wansdown to perform its duties under the Sale Contract, Blank Rome was not a

party to the Sale Order or the Sale Hearings for *res judicata* purposes, and, because the Pelmadulla

Emails were not produced until after the Sale Order had been entered, the Sale Order does not have

*res judicata* effect; (ii) the Defendants' merits arguments are unavailing; and (iii) the Court should

decide the Motion to Amend before deciding the motion to dismiss the 1063 Complaint.  [1075

ECF No. 12 at 26–39; 1056 ECF No. 126 at 9–20].  The Defendants replied that (i) 29 Beekman

misconstrues the Summary Judgment Decision and the Sale Order; (ii) 29 Beekman ignores several

merits arguments and and improperly relies on information outside of the Complaints; and (iii) the

Court should consider the Motions to Dismiss and Motion to Amend concurrently.  [1075 ECF

No. 14 at 4–11; 1075 ECF No. 15 at 1–5; 1056 ECF No. 131 at 3–14].  The Court held oral

argument on a separate sanctions motion and the Motions to Dismiss and Motion to Amend on

November 17 and 21, 2022 [1075 ECF Nos. 17, 18], with the discussion on the Motions to Dismiss

and Motion to Amend occurring primarily during the November 21, 2022 hearing (the "**November

21 Hearing**").

        B.      The Motion to Amend

        29 Beekman seeks to amend the 1063 Complaint by (i) adding factual allegations and legal

contentions, most—if not all—of which were already included in the 1075 Complaint and are

already reflected in the recitation of the facts above, (ii) making certain superficial edits to the four

existing causes of action, and (iii) adding four new causes of action, numbered five through eight.

[*See generally* 1056 ECF No. 100-2].  The fifth "cause of action against Wansdown" is a request

for a declaratory judgment that "Pelmadulla's knowledge of a claim in bankruptcy against Debtor

is attributable to Debtor under the laws of agency – thereby rendering Debtor's actions in the

execution of the contract to be a violation of good faith and fair dealing"; the sixth cause of action

is against Wansdown for violation of the implied covenant of good faith and fair dealing "in the

prosecution of the contract when Debtor had actual knowledge of the Pelmadulla Claim"; the

seventh cause of action is against Wansdown for breach of the Liquidated Damages Provision of

the Sale Contract; and the eighth cause of action is against Wansdown for breach of Section 33 of

the Sale Contract by allegedly refusing to agree to an adjournment of the closing date.  [1056 ECF

No. 100-2 at 23–26].

In its briefing on the Motion to Amend, 29 Beekman begins by arguing that Fed. R. Civ.

P. 15(a)(2) provides that "[t]he court should freely give leave [to amend the complaint] when

justice so requires" and that the "rule in our circuit is to allow a party to amend its complaint unless

the nonmovant demonstrates prejudice or bad faith," but it then spends the bulk of the argument

asserting that Wansdown breached the Sale Contract and that 29 Beekman did not.  [1056 ECF

No. 99 at 10–14].  Wansdown opposed the Motion to Amend, arguing that the "proposed

amendments are futile, [are] asserted in bad faith for dilatory purposes," and "would unduly

prejudice defendants" if allowed.  [1056 ECF No. 112 at 16–28].

**DISCUSSION**

**IV.**   **Legal Standards**

    A.   Rule 12(b)(6)

"A Rule 12(b)(6) motion tests the sufficiency of the allegations in support of a complaint

in light of the pleading requirements in Rule 8 of the Federal Rules of Civil Procedure."  *In re*

*Extended Stay, Inc.*, Case No. 09-13764, 2020 WL 10762310, at *5 (Bankr. S.D.N.Y. Aug. 8,

2020).  To survive a Rule 12(b)(6) motion, a plaintiff must show that the complaint "contain[s]

sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the complaint's factual allegations as true and must draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Thus, "[a] pleading that offers labels and conclusions or a formulaic recitation of a cause of action will not do." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. Proc. 8(a)(2)). "To be plausible, the complaint need not show a probability of plaintiff's success, but it must evidence more than a mere possibility of a right to relief." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) (citing *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 556).

On a motion to dismiss pursuant to Rule 12(b)(6), "courts must consider the complaint in its entirety as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc.*, 551 U.S. at 322. A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152

(2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

B.    Rule 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

C.    Rule 15(a)(2)

Fed. R. Civ. P. 15(a)(2) provides that, after a complaint has already been amended once, "a party may amend its [complaint] only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." "The Supreme Court has, however, interpreted Rule 15 to permit such amendments only when (1) the party seeking the amendment has not unduly delayed, (2) when the party is not acting in bad faith or with a dilatory motive, (3) when the opposing party will not be unduly prejudiced by the amendment, and (4) when the amendment is not futile." *Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 148 F. Supp. 2d 321, 326 (S.D.N.Y. 2001) (citing *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).  "[I]t is within the sound discretion" of the Court "to grant or deny leave to amend" under Rule 15(a)(2), and the Court "has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "However, outright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." *McCarthy*, 482 F.3d at 200–01 (quotation marks and citation omitted).

**V.    The Motions to Dismiss Are Granted**

A.    29 Beekman's Claims for Declaratory Judgment Against Wansdown and for Breach of the Letter Agreement and Letter Amendment Against Golsorkhi Are Dismissed Because 29 Beekman Abandoned Them

24

The fourth "cause of action" against Wansdown in the 1063 Complaint does not appear to be a "cause of action" at all, but a request for a "declaration that Debtor is bound by the sworn affidavit of its managing director that the closing date was 45 days after the Confirmation Order." [1063 ECF No. 3 at 20].  In its motion to dismiss and during the November 21 Hearing, Wansdown raised several strong arguments for dismissal of this so-called "cause of action," including that (i) it "is a disguised breach of contract action that seeks to find that Wansdown breached the Purchase Agreement and must fail" because breach of contract claims are precluded by the doctrine of *res judicata*; (ii) it is "a poorly disguised attempt by Beekman to reargue an issue that" was already decided against in the Summary Judgment Decision and the Reconsideration Decision; (iii) it "pertain[s] to past conduct" for which declaratory relief is unavailable; (iv) it is impermissible because it is "duplicative of, or will be resolved in the context of, a breach of contract action"; (v) the 45-Day Representation was made after the Sale Contract was executed and therefore could not have induced 29 Beekman to enter into the Sale Contract; (vi) the Sale Contract was an integrated agreement, so the 45-Day Representation was legally irrelevant; and (vii) the 1063 Complaint "fails to allege the authority for the declaratory relief sought by Beekman and what laws have been violated" and therefore "deprives Wansdown of fair notice of the basis for which Beekman believes it[ is] entitled to a judgment."  [1056 ECF No. 111-1 at 21–22, 33–34; 1056 ECF No. 136 at 45:11–46:6].  29 Beekman failed to address any of these arguments and, indeed, failed to mention this cause of action even once in its opposition brief or during the November 21 Hearing. [*See generally* 1056 ECF No. 126; 1056 ECF No. 136].

The fifth cause of action in the 1075 Complaint is against Golsorkhi for breach of the Letter Agreement and/or Letter Amendment.  [1075 ECF No. 1 at 50 of 75].  Under the heading "The Fifth Cause of Action Must be Dismissed," Golsorkhi argues that "Plaintiff's claim is belied by

Plaintiff's own allegations" because 29 Beekman alleges that it is only entitled to its $15,000 advance back if 29 Beekman "did not acquire [the] Property, *other than on account of a default by 29 Beekman*," and "Plaintiff failed to acquire the Property because of its own default." [1075 ECF No. 9-1 at 8]. As with the fourth cause of action in the 1063 Complaint, 29 Beekman failed to address or even mention the 1075 Complaint's fifth cause of action in its opposition brief or during the November 21 Hearing. [*See generally* 1075 ECF No. 12; 1075 ECF No. 18].

"Numerous courts in this District have held that, on a motion to dismiss, a claim is abandoned if a plaintiff fails to address or oppose a defendant's arguments requesting dismissal of that claim." *Doe v. Nat'l Ramah Comm'n, Inc.*, No. 16-CV-6869, 2018 WL 4284324, at *8 (S.D.N.Y. Sept. 7, 2018) (collecting cases). Such a holding is particularly appropriate here, where 29 Beekman failed to address even one of Wansdown's arguments regarding these causes of action or even to mention the causes of action at all. Therefore, the Court concludes that 29 Beekman has abandoned its fourth cause of action against Wansdown in the 1063 Complaint and its fifth cause of action against Golsorkhi in the 1075 Complaint, and those claims are therefore dismissed. Because the declaratory judgment claim against Wansdown is dismissed as abandoned, this Decision need not discuss Wansdown's other arguments pertaining to it other than to note that, even if the claim were not abandoned, the Court would dismiss it anyway, because several—if not all—of the arguments are plainly meritorious.

B.    29 Beekman's Unnumbered "Claims Against All Defendants" Are Dismissed Because They Seek Declaratory Relief that Is Duplicative of the 1056 Proceeding

In addition to four numbered causes of action, the 1063 Complaint contains unnumbered "Claims Against All Defendants." [1063 ECF No. 3 at 21–22]. The 1063 Complaint does not specifically identify what these "Claims" are, instead giving them the somewhat vague title "Expiration of Closing Period and Return of Deposit and Advance Purchase Price Payment under

the Side Agreement." [1063 ECF No. 3 at 21]. As best the Court can discern, the "Claims" appear

to be a request for a declaratory judgment "declaring and finding that Buyer is entitled to receive

the return of Buyer's down payment deposit with interest accrued thereon and to receive the return

of Buyer's advance payment under the [Letter] Agreement with interest accrued thereon, and

directing the Escrow Agent [i.e., Blank Rome] to release the down payment deposit under the

Contract to Buyer with all accrued interest thereon." [1063 ECF No. 3 at 22]. As noted above, 29

Beekman has voluntarily dismissed Golsorkhi from the 1063 Complaint, so the portion of this

"claim" pertaining to the Letter Agreement is dismissed. Additionally, the 1063 Complaint fails

to identify any cause of action against Blank Rome. Therefore, the Court will consider only the

portion of this "claim" pertaining to the return of the down payment by Wansdown.

When determining whether to "exercise its discretion to entertain a request for declaratory

judgment . . . a court must consider: '(1) whether the judgment will serve a useful purpose in

clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the

controversy and offer relief from uncertainty.'" *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d

301, 311 (S.D.N.Y. 2010) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411

F.3d 384, 389 (2d Cir. 2005)). A court may also consider other factors, including, of relevance

here, "whether there is a better or more effective remedy." *Id.* (quoting *Dow Jones & Co. v.

Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003)). In *Stern*, the District Court explained that "[t]he

fact that a lawsuit has been filed that will necessarily settle the issues for which the declaratory

judgment is sought suggests that the declaratory judgment will serve 'no useful purpose.' . . . Nor

will it serve to 'offer relief from uncertainty' since the litigation on the main claims will necessarily

offer that relief. Finally, there is a 'better or more effective remedy' than a declaratory judgment

action-specifically, the underlying litigation itself." *Id.* (collecting cases).

27

The same is true here.  The resolution of the 1056 Proceeding will necessarily determine whether Wansdown is entitled to keep the down payment, and, conversely, whether 29 Beekman is entitled to get it back; indeed, that is the entire purpose of the 1056 Proceeding.  Thus, as in *Stern*, the declaratory relief requested in the 1063 Complaint "will serve no useful purpose" and will not "offer relief from uncertainty," and the resolution of the 1056 Proceeding is a "better or more effective remedy" than proceeding with a declaratory judgment action on precisely the same issue.  Indeed, as counsel for Wansdown confirmed during the November 21 Hearing, the outcome of the trial in the 1056 Proceeding will determine whether or not 29 Beekman gets its deposit back. [1056 ECF No. 136 at 43:18–44:3 (The Court: "I guess [29 Beekman's theory] is, they had no obligation to close in the circumstances presented if they could prove that up, and therefore I guess the non-return of the deposit would be either a breach or it would be otherwise undone as a result of the findings of the trial.  Right?"  Wansdown's Counsel: "Yes.  I don't think they can un-ring the bell on the breaches, but I think the question then would be, are they excused from the obligation to close, and then the answer to that determines who gets the down payment.")].  Thus, dismissal will not prevent 29 Beekman from presenting its contentions and pursuing the return of its deposit in the 1056 Proceeding, or at least allowance of a claim in the amount of its deposit along with any related damages to which it asserts entitlement.  Therefore, the Court declines to exercise its discretion to entertain 29 Beekman's request for declaratory judgment, and the unnumbered "Claims Against All Defendants" are dismissed.

C.    29 Beekman's Remaining Claims Are Dismissed Because They Are Barred by the Doctrine of *Res Judicata*

The Defendants argue that 29 Beekman's claims constitute an impermissible collateral attack on the Sale Order and Confirmation Order and are therefore barred by the doctrine of *res*

*judicata.* [1056 ECF No. 111-1 at 17–22; 1075 ECF No. 10-1 at 13–17; 1075 ECF No. 9-1 at 3–4]. The Court agrees.

"*Res judicacta* bars parties from relitigating issues that were or could have been raised in prior actions." *In re Aiolova*, 496 B.R. 123, 130 (Bankr. S.D.N.Y. 2013). The rationale behind the doctrine is to "protect[] against 'the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 130 (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "These principles of finality 'are particularly important in the bankruptcy context, where numerous contending claims and interests are gathered, jostle, and are determined and released.'" *In re Indu Craft Inc.*, No. 11 CIV. 5996 JMF, 2012 WL 3070387, at *1 (S.D.N.Y. July 27, 2012) (quoting *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 91 (2d Cir. 1997)), *aff'd*, 580 F. App'x 33 (2d Cir. 2014).

Although *res judicata* is generally an affirmative defense, "[d]ismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises [*res judicata*] . . . and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the claims are barred as a matter of law." *In re Arcapita Bank B.S.C.(c)*, 520 B.R. 15, 22 (Bankr. S.D.N.Y. 2014) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)). An earlier decision "bars later litigation if '[the] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.'" *Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 (2d Cir. 2021) (quoting *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007)). The Court first considers 29 Beekman's argument that the Court previously rejected the Defendants' *res judicata* arguments and then considers each element in turn.

      1.    *The Court Did Not Previously Reject the* Res Judicata *Arguments*

29 Beekman asserts that "Blank Rome argued extensively in its summary judgment memorandum that 29 Beekman's claims were barred by the Sale Order," and that "[d]espite those arguments," the Court's Summary Judgment Decision "held that the only claim that was barred by the Sale Order was the claim for rescission." [1056 ECF No. 126 at 10–11]. Wansdown and Blank Rome counter that "[t]he Court did not expressly limit its ruling to 'rescission' claims, as Beekman suggests." [1056 ECF No. 131 at 6]. The plain language of the Summary Judgment Decision makes clear that Wansdown and Blank Rome are correct. The decision merely says that "Beekman's claim of rescission, to the extent it is making such a claim, constitutes a collateral attack on the Sale Order which, as noted, is final and non-appealable." [1056 ECF No. 60 at 30]. Nothing in this language or in the rest of the Summary Judgment Decision can be read to suggest that *other* claims are *not* precluded by the Sale Order. Moreover, during the November 21 Hearing, the Court specifically articulated Blank Rome's and Golsorkhi's positions that the 1075 Complaint was an "[im]permissible collateral attack on the sale order" [1056 ECF No. 136 at 122:4–13], and 29 Beekman failed to respond in any meaningful way. Therefore, the Court rejects 29 Beekman's argument and considers whether *res judicata* is applicable here.

   2.    *The Sale Order and Confirmation Order Are Final Judgments on the Merits*

Both the Sale Order and the Confirmation Order are final judgments on the merits. "A bankruptcy court order approving a sale of assets is a final order for *res judicata* purposes." *In re Clinton St. Food Corp.*, 254 B.R. 523, 530–31 (Bankr. S.D.N.Y. 2000) (collecting cases); *see also, e.g.*, *Aiolova*, 496 B.R. at 130–31 (same). Similarly, "[a] bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect." *In re 477 W. 142nd St. Hous. Dev. Fund Corp.*, No. 20-CV-6771, 2022 WL 2093418, at *9 (S.D.N.Y. June 10, 2022) (quoting *Arcapita Bank*, 520 B.R. at 21) (quotation marks omitted), *appeal dismissed* (Dec. 19, 2022). 29 Beekman

does not suggest otherwise.  [*See generally* 1075 ECF No. 12; 1056 ECF No. 126].  Therefore, the first element of *res judicata* is satisfied.

3.      *The Court Is a Court of Competent Jurisdiction*

The Court unquestionably was a court of competent jurisdiction to issue both the Sale Order and the Confirmation Order.  *See, e.g.*, *Aiolova*, 496 B.R. at 131 ("[A] bankruptcy court has the jurisdiction to entertain and enter orders authorizing the sale of estate assets and therefore qualifies as a court of competent jurisdiction [for *res judicata* purposes].") (citing 11 U.S.C. § 363); *Arcapita Bank*, 520 B.R. at 22 (noting that it was "not dispute[d] that [this] element[] of *res judicata* [was] satisfied as . . . this Court was of competent jurisdiction" to enter a confirmation order); 11 U.S.C. § 1129.  29 Beekman does not dispute these basic tenets of bankruptcy law.  [*See generally* 1075 ECF No. 12; 1056 ECF No. 126].  Therefore, the second element of *res judicata* is satisfied.

4.      *These Proceedings Involve the Same Parties or Their Privies as the Sale and Confirmation Proceedings*

The present proceeding involves the same parties (or their privies) as the proceedings concerning both the Sale Order and the Confirmation Order (respectively, the "**Sale Proceedings**" and the "**Confirmation Proceedings**").  29 Beekman does not dispute that it and Wansdown were parties to both the Sale Proceedings and Confirmation Proceedings.  [*See generally* 1075 ECF No. 12; 1056 ECF No. 126].  Instead, 29 Beekman argues (only in the 1075 Proceeding) that "the Sale Order finding on fraud was only in respect of [sic] no fraud between 29 Beekman and Wansdown, which is what the hearing was about.  The Sale Order hearing was not about any other fraud, particularly not involving Blank Rome, which was not a party to the hearing."  [1075 ECF No. 12 at 27].  This argument fails for several independent reasons.

31

*First*, "because a § 363 proceeding is *in rem*, it is final as to the entire world [for *res judicata*

purposes], including those who were not parties to the sale." *Clinton St.*, 254 B.R. at 531 (citing

*Matter of Met-L-Wood Corp.*, 861 F.2d 1012, 1017 (7th Cir. 1988)). Thus, even if Blank Rome

and Golsorkhi were not "parties to" the Sale Order or the Sale Hearings, the Sale Order would still

be binding on them assuming it satisfied the other elements of *res judicata*.

*Second*, even setting aside that § 363 proceedings are "final as to the entire world," it strains

credulity to suggest that Blank Rome and Golsorkhi were not "part[ies] to the hearing" or, at a

minimum, privies of Wansdown, considering that, during the Sale Hearings, Blank Rome appeared

and spoke solely in its capacity as Wansdown's counsel [Main ECF No. 57 at 1, 52–54], and

Golsorkhi was called and examined as a witness in his capacity as Wansdown's managing director

[*id.* at 6–43]. "Privity bars relitigation of the same cause of action against a new defendant known

by a plaintiff at the time of the first suit where the new defendant has a sufficiently close

relationship to the original defendant to justify preclusion, such as where the new defendant is the

old defendant's proxy, agent, or designated representative. The doctrine of privity is a functional

inquiry, not a formalistic one, and must be applied with flexibility. . . . [R]es judicata may bar

non-parties to earlier litigation . . . when the interests involved in the prior litigation are virtually

identical to those in later litigation." *Cho*, 991 F.3d at 169–70 (quotation marks and citations

omitted). "Privity may be found where a party's interest in litigation is virtually identical to an

interest it had in a prior litigation, where it was not actually named, but can be said to have had

virtual representation. Privity may also be found where a party not previously named in litigation

nonetheless controlled and financed the defense of the suit. Finally, the fact that the parties in the

prior and current litigation had the same attorney is of singular significance in the privity analysis."

*Melwani v. Jain*, No. 02 CIV. 1224, 2004 WL 1900356, at *2 (S.D.N.Y. Aug. 24, 2004) (quotation

marks and citations omitted).

These considerations unquestionably apply to Blank Rome and Golsorkhi.  Blank Rome was Wansdown's counsel, and Golsorkhi its Managing Director, and their interests in seeking sale approval and plan confirmation were aligned.  *See U.S. Sec. & Futures Corp. v. Irvine*, No. 00 CIV. 2322, 2002 WL 34191506, at *4 (S.D.N.Y. May 13, 2002) ("Courts have found corporate directors and officers in privity with corporate defendants [for *res judicata* purposes] based on the identity of interests and close relationship between them.") (quotation marks and citations omitted) (collecting cases); *Browning Debenture Holders' Comm. v. DASA Corp.*, 454 F. Supp. 88, 104 (S.D.N.Y. 1978) ("[T]he principle of res judicata bars subsequent actions not only between the same parties, but also between those in privity with the original parties.  DASA's directors and lawyers are privies of DASA with respect to the operative facts of this case.") (citations omitted), *aff'd*, 605 F.2d 35 (2d Cir. 1978); *see also Oyekwe v. Rsch. Now Grp., Inc.*, 542 F. Supp. 3d 496, 507–08 (N.D. Tex. 2021) (noting that "privity may exist where . . . a party's attorneys are added as defendants because of their roles in their clients' alleged wrongdoing" and collecting cases in which "attorneys were [] given the benefit of res judicata as to their role in their clients' alleged wrongdoing" when the "attorneys were added to a second lawsuit for allegedly helping their clients commit fraud that was alleged, or could have been alleged, against the clients in the first lawsuit"), *appeal dismissed*, No. 21-10580, 2021 WL 8776378 (5th Cir. Dec. 28, 2021).  Thus, even if Blank Rome and Golsorkhi were not "parties to" the Sale Order or the Sale Proceedings, they were still privies of Wansdown, which was a party thereto.

*Third*, contrary to 29 Beekman's position, the Sale Order explicitly extends to Blank Rome by providing that none of Wansdown's "representatives" "acted in any improper or collusive manner":

> The sale of the Property pursuant to the Purchase Agreement and this Order was negotiated by the Debtor and the Purchaser at arm's-length, without collusion or fraud, and in good faith within the meaning [of] section 363(m) of the Bankruptcy

Code.   None of the Debtor, the Purchaser, *their respective affiliates, or their representatives* has engaged in any conduct that would cause or permit sale of the Property or the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code, *or has acted in any improper or collusive manner* with any person.

[Main ECF No. 55 at 2] (emphasis added).  Blank Rome, as Wansdown's counsel, was (and is) Wansdown's "representative"; indeed, the 1075 Complaint itself alleges that "Blank Rome represented Wansdown for years prior to Wansdown's filing a petition in bankruptcy on October 8, 2019" and that Wansdown was "represented by Mr. Flick of Blank Rome throughout the Contract negotiation period."  [1075 ECF No. 1 at 28 of 75, 36 of 75].

Without contesting the proposition that a company's counsel generally acts as its representative, 29 Beekman suggests that "[t]hrough its fraud, Blank Rome was acting outside its role as legitimate legal counsel to Wansdown and Golsorkhi and therefore enjoys no immunity or legal protection counsel would otherwise enjoy."  [1075 ECF No. 1 at 19 of 75; *see also* 1075 ECF No. 12 at 35 ("29 Beekman's fraud claim against Blank Rome is based on false representations by Blank Rome, as an independent entity acting alone and in its own interests . . . .")].   But 29 Beekman cites no law for the proposition that an attorney ceases to be its client's representative solely because a third party alleges that the attorney defrauded that third party, nor does 29 Beekman allege facts supporting a plausible inference that Blank Rome acted on its own behalf rather than on behalf of its client, Wansdown [*see generally* 1075 ECF No. 12].

To the contrary, 29 Beekman's own allegations that "Golsorkhi, as the sole officer and Managing Director of Wansdown, and Golsorkhi's counsel, Blank Rome (also acting as counsel to Wansdown), dominated and controlled the decisions and activities of Wansdown during the relevant period, and thus are the alter egos for Wansdown" [1075 ECF No. 1 at 49 of 75] and that Blank Rome "provided substantial assistance to Wansdown in its fraud and fraudulent concealment" [*id.* at 48 of 75], paired with the fact that 29 Beekman sued Wansdown itself for

precisely the same conduct for which it is now suing Blank Rome [*see generally* 1063 ECF No. 3], bely any suggestion that Blank Rome was "an independent entity acting alone."  And 29 Beekman's speculative allegations of independent fraudulent intent for self-serving reasons are implausibly farfetched.  Therefore, the Court rejects 29 Beekman's arguments to the extent they are meant to suggest that Blank Rome was not Wansdown's "representative" as that term is used in the Sale Order.  Thus, the Sale Order, by its express terms encompasses Blank Rome in its finding that no representative had "acted in any improper or collusive manner" in connection with the Property Sale.

*Fourth*, 29 Beekman has never suggested that Blank Rome and Golsorkhi were not, at a minimum, privies of parties to the Confirmation Proceedings [*see generally* 1075 ECF No. 12], so even if the Court accepted 29 Beekman's arguments regarding the Sale Proceedings (which it does not), the third element of *res judicata* would still be satisfied as to the Confirmation Order.

For all these reasons, the third element of *res judicata* is satisfied.

5. *The Sale Order and the Confirmation Order Involve the Same Causes of Action as this Proceeding*

As to the fourth and final element of *res judicata*, the Sale Order and the Confirmation Order involve the same causes of action as this proceeding.  "[T]he standard res judicata analysis can be an awkward fit when applied . . . to bankruptcy proceedings," so "[i]n the bankruptcy context, . . . instead of examining whether a subsequent lawsuit asserts claims that could have been included as part of a previous lawsuit, courts have assessed whether a new action seeks to bring claims that could have been raised and litigated within the scope of the bankruptcy proceeding." *DW Last Call Onshore, LLC v. Fun Eats & Drinks LLC*, No. 17-CV-962, 2018 WL 1470591, at *4 (S.D.N.Y. Mar. 23, 2018) (quoting *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157–58 (2d Cir. 2017)).  Bankruptcy courts will also consider, "[a]s an aspect of this element, . . .

'whether an independent judgment in a separate proceeding would "impair, destroy, challenge, or invalidate the enforceability or effectiveness" of the reorganization plan,'" *Arcapita Bank*, 520 B.R. at 28 (quoting *Corbett*, 124 F.3d at 88), but the "critical question for *res judicata* purposes . . . is 'whether the party could or should have asserted the claim in the earlier proceeding,'" *id.* (quoting *In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006)).

> a.   29 Beekman Could and Should Have Raised its Fraud Claims and its Breach of Contract Claim Based on the Section 51(b) Representation at the Sale and/or Confirmation Hearings

29 Beekman could and should have raised its fraud claims—i.e., its first cause of action against Blank Rome and its fourth cause of action against Golsorkhi in the 1075 Complaint, and its second cause of action against Wansdown in the 1063 Complaint—as well as its breach of contract claim based on the Section 51(b) Representation—i.e., its first cause of action against Wansdown in the 1063 Complaint—during the Sale Proceedings and the Confirmation Proceedings.  According to the Complaints, the only alleged misrepresentation forming the basis of the fraud claims and the breach of contract claim is the Section 51(b) Representation, within the Sale Contract of September 25, 2019, "that the sale proceeds from the sale of the Property would be sufficient to satisfy all claims" against Wansdown.  [1075 ECF No. 1 at 47 of 75, 50 of 75; 1063 ECF No. 3 at 17–19].  But as discussed above, the Sale Order specifically included a finding that the sale had been negotiated "at arm's-length, without collusion or fraud, and in good faith within the meaning [of] section 363(m) of the Bankruptcy Code," and that "[n]one of the Debtor, the Purchaser, their respective affiliates, or their representatives ha[d] acted in any improper or collusive manner with any person."  [Main ECF No. 55 at 2].

This finding had also been included in the proposed order attached to Wansdown's January 7, 2020 Sale Motion [Main ECF No. 38 at 19 of 54], as well as in the revised proposed order filed on January 13, 2020 [Main ECF No. 51 at 2–3], but 29 Beekman did not object to its inclusion

either prior to or during the January 16 Hearing on the Sale Motion [*see generally* Main ECF No.

57]. As the Court noted during the November 21 Hearing on the Motions to Dismiss, the Court

"find[s] it instructive [that] the motion seeking entry of the sale order specifically requested a

finding of good faith and lack of fraud and a 363(m) finding" [1075 ECF No. 136 at 146:3–6],

because it demonstrates that 29 Beekman was fully on notice that, if it failed to object, the Sale

Order would foreclose any claims of fraud regarding the sale. Even so, 29 Beekman failed to

object.

29 Beekman argues that it "did not raise Blank Rome's fraudulent conduct at the Sale Order

hearing, which took place on January 16, 2020" because "Blank Rome then was concealing the

very emails that formed the basis for 29 Beekman's claim of fraud. Blank Rome did not produce

those Pelmadulla emails until July 24, 2022, long after the Sale Order was entered. Had Blank

Rome or Debtor revealed those emails, 29 Beekman would have raised the fraud." [1075 ECF No.

12 at 27; 1056 ECF No. 126 at 11]. The Court assumes the truth of the contention that the

Pelmadulla Emails were not produced until July 24, 2020, after the Sale Hearings and entry of the

Sale Order. But the Complaints themselves reveal that 29 Beekman had all the information it

needed to raise the issue of Section 51(b)'s falsity well in advance of the Sale Hearings (and the

Confirmation Hearing, which 29 Beekman again fails to address in its briefing).

Specifically, 29 Beekman alleges, and the claims register confirms, that the Pelmadulla

Claim was filed "[o]n or about December 31, 2019" and that this filing "blatantly exposed the

falsity of Wansdown's misrepresentation, as the proceeds of a sale under the Contract could clearly

not satisfy all claims." [1075 ECF No. 1 at 28 of 75, 30 of 75, 65 of 75; 1063 ECF No. 3 at 11–

13]. This reality precludes any viable contention that 29 Beekman lacked sufficient information

or at least inquiry notice to raise fraud, misrepresentation, or contract breach contentions at the

Sale Hearings. This is so because 29 Beekman was concededly on notice of information that it

contends establishes that the Section 51(b) Representation was false more than two weeks before the January 16 Hearing and more than six months before the July 16, 2020 Confirmation Hearing. Therefore, even if 29 Beekman did not know about the supposed intentionality of that falsity prior to the January 16 Hearing, it could and should have objected based on the representation's falsity itself during that hearing.  Further, if it so chose, it could and should have sought discovery on the issue, which likely would have turned up the Pelmadulla Emails (as evidenced by the fact that, once 29 Beekman *did* seek discovery, the Pelmadulla Emails were produced before the discovery deadlines set by the Court).

In any event, 29 Beekman, by its own account, "strongly suspected something was wrong" on March 23, 2020, more than three months before the Confirmation Hearing.  [1075 ECF No. 12 at 17–18].  Indeed, by the time of the Confirmation Hearing, 29 Beekman had, *inter alia*, initiated the 1063 Proceeding by filing a complaint alleging fraud on March 25, 2020 [1063 ECF No. 1 at 15–16], filed the amended 1063 Complaint alleging fraud on April 23, 2020 [1063 ECF No. 3 at 19], and initiated "discovery on its claims that relate to Debtor's material misrepresentations in the purchase agreement" by letter dated May 26, 2020 [1056 ECF No. 32 at 1].  Notably, this letter—which was filed more than a month before the Confirmation Hearing—asserts that Pelmadulla had "just filed papers in support of its claim . . . which demonstrate[d] that Debtor ha[d] been untruthful with the Court and 29 Beekman," that Wansdown had "made material misrepresentations to 29 Beekman in the purchase agreement," that 29 Beekman found certain of Wansdown's representations "disturbing," that "[s]omething [was] askew when the sole shareholder (Pelmadulla) of a one-person enterprise (Debtor) [was] essentially claiming that the one-person enterprise [was] committing a fraud on the Court," and that "Pelmadulla's counsel [had] revealed Debtor's fraud."  [1056 ECF No. 32 at 1–3].  Despite all of this, and even though discovery was still ongoing at the time of the Confirmation Hearing, 29 Beekman did not raise any objection to

confirmation—such as, for example, that the Revised Second Plan should not be confirmed until discovery on the fraud claims was completed.

Thus, the Sale Proceedings and the Confirmation Proceedings involved the same issues as 29 Beekman's fraud claims and its breach of contract claim based on the Section 51(b) Representation, and the fourth element of *res judicata* is satisfied as to the first and fourth causes of action in the 1075 Complaint and the first cause of action in the 1063 Complaint.

> b.     29 Beekman Could and Should Have Raised its Aiding and Abetting Fraud Claim at the Sale and/or Confirmation Hearings

29 Beekman also could and should have raised its aiding and abetting fraud claim—i.e., its second cause of action against Blank Rome in the 1075 Complaint—during the Sale Proceedings and the Confirmation Proceedings.  The 1075 Complaint alleges that "Blank Rome provided substantial assistance to Wansdown in its fraud and fraudulent concealment," but fails to specify precisely which alleged misstatements or omissions it relies on as the basis for Wansdown's alleged fraud.  [1075 ECF No. 1 at 48 of 75].  That the sole fraud claim against Wansdown in the 1063 Complaint is based only on the Section 51(b) Representation heavily suggests that the aiding and abetting fraud claim against Blank Rome in the 1063 Complaint is also based solely on the Section 51(b) Representation.  To the extent that the aiding and abetting fraud claim is based on any alleged fraud involving the Property Sale or the falsity of the Section 51(b) Representation, the Sale Order and the Confirmation Order preclude the claim for the reasons discussed above. The only other misrepresentations and omissions alleged in the 1075 Complaint concern Blank Rome's alleged failure to disclose its simultaneous representation of Wansdown and Pelmadulla [1075 ECF No. 1 at 36–45 of 75], but the Court fails to see how this could form the basis of a claim that Blank Rome aided and abetted *Wansdown's* alleged fraud.  Therefore, the fourth element of *res judicata* is satisfied as to the second cause of action in the 1075 Complaint.

> c.  29 Beekman Could and Should Have Raised its Claim for Breach of
> the Covenant of Good Faith and Fair Dealing at the Sale and/or
> Confirmation Hearings

29 Beekman could and should have raised its claim for breach of the covenant of good faith

and fair dealing—i.e., its third cause of action against Wansdown in the 1063 Complaint—during

the Sale Proceedings and Confirmation Proceedings.  Wansdown argues that this claim is not an

independent cause of action but is subsumed by 29 Beekman's breach of contract claims and

therefore fails because they fail.  [*See, e.g.*, 1056 ECF No. 111-1 at 21].  Even (generously)

assuming, *arguendo*, that this claim could be brought independently of the breach of contract

claims, it is still barred by *res judicata*.

According to the 1063 Complaint, this claim is based on Wansdown's "insiste[nce] on

selling the property pursuant to a Section 363 Sale over [29 Beekman's] objections" and

Wansdown's "refus[al] to pay the mansion tax associated with the sale under Section 363,"

especially in light of 29 Beekman's insistence "[d]uring contract negotiations" that it "did not want

to pay the mansion tax" and that it would "only permit a Section 363 Sale of the Property if the

sale of the Property was not possible pursuant to a bankruptcy plan."  [1063 ECF No. 3 at 19–20].

But all of these events occurred prior to the entry of the Sale Order on January 16, 2020 and could

have been raised and addressed at the January 16 Hearing.  For example, the "contract

negotiations"—including the decision to include a provision that 29 Beekman "shall be responsible

for the NYS and NYC 'Mansion Tax'" [Main ECF No. 38 at 46–47 of 54]—necessarily occurred

before finalization of the September 25, 2019 Sale Contract.  The Sale Motion—which attached a

proposed Sale Order finding that the Sale Contract had been negotiated "at arm's-length, without

collusion or fraud, and in good faith within the meaning [of] section 363(m) of the Bankruptcy

Code," and that "[n]one of the Debtor, the Purchaser, their respective affiliates, or their

representatives ha[d] acted in any improper or collusive manner with any person"—was filed on

January 7, 2020.  [Main ECF No. 55 at 2].  The "insiste[nce] on selling the property pursuant to a Section 363 Sale" occurred in January 2020 and was precisely what prompted the Sale Proceedings in the first place, and the "refus[al] to pay the mansion tax" occurred no later than January 15, 2020, the day before the January 16 Hearing.  [*See* 1075 ECF No. 10-2 at 5 of 6].  Indeed, by January 15, 2020, 29 Beekman had already formed the view that "proceeding with [a bankruptcy] plan would be undesirable [for Wansdown], but certainly far from 'not possible.'"  [*Id.*].  Despite all of this, and despite 29 Beekman's alleged "objections" raised with Wansdown itself, 29 Beekman did not raise any formal objection at the January 16 Hearing.

Because 29 Beekman could and should have raised this claim previously, the fourth element of *res judicata* is satisfied as to the third cause of action in the 1063 Complaint.

> d.    29 Beekman Could and Should Have Raised its Breach of Contract Claim Based on the Liquidated Damages Provision at the Confirmation Hearing

The Court cannot conclude that 29 Beekman could or should have raised its breach of contract claims based on alter ego liability arising from the Liquidated Damages Provision—i.e., its third cause of action against Blank Rome in the 1075 Complaint—during the Sale Proceedings, but 29 Beekman could and should have done so during or prior to the Confirmation Proceedings.

Blank Rome cites various out-of-circuit cases for the proposition that "[w]hen a bankruptcy court approves the assumption of an executory contract (such as the Purchase Agreement), it necessarily finds that no uncured defaults exist," and that "[w]here the nonbankrupt party has knowledge of facts sufficient to place the party on notice that a 'potential' pre-assumption breach has occurred, res judicata bars that party from later asserting a claim based upon the pre-assumption breach."  [1075 ECF No. 10-1 at 14] (collecting cases).  These statements are true as far as they go, but they are inapplicable to the Sale Order.

41

The third cause of action stems from an alleged breach of Section 51(b) of the Contract, which, as quoted in the 1075 Complaint, provides that, in the event that Wansdown sells the Property to someone other than 29 Beekman at a higher price, "Purchaser shall be entitled to receive, as liquidated damages and not as a penalty, . . . US$500,000, plus 80% of all gross proceeds of such disposition(s) that are in excess of US$10,800,00." [1075 ECF No. 1 at 49 of 75]. According to the 1075 Complaint, "29 Beekman requested Wansdown to ensure that it would pay to 29 Beekman the liquidated damages set forth in Section 51b of the Contract, namely US $500,000, plus 80% of all gross proceeds of such disposition(s) that are in excess of US$10,800,000," but "Wansdown refused to pay to 29 Beekman the liquidated damages as required by Section 51b of the Contract." [1075 ECF No. 1 at 48–49 of 75]. 29 Beekman alleges that this refusal constituted a breach for which Blank Rome and Golsorkhi, "as alter egos for Wansdown," are liable. [1075 ECF No. 1 at 48–49 of 75].

Although the 1075 Complaint does not specify when the alleged breach—i.e., Wansdown's alleged refusal to pay pursuant to the Liquidated Damages Provision—occurred, it can only have occurred at some point after the Property Sale fell through and a replacement buyer purchased the Property. This did not occur until after the Sale Order had been entered. Therefore, with respect to any assumption of the Sale Contract effected by the Sale Order, the alleged breach is not a "pre-assumption breach." It is unclear, however, whether the alleged breach occurred before or after entry of the *Confirmation* Order, because the Complaint does not specify the timing of 29 Beekman's alleged request for payment of liquidated damages and Wansdown's alleged refusal. For example, 29 Beekman may have requested assurance of payment as a preemptive measure before it even had notice of the proposed Second Sale Contract; or it may have requested assurance after learning about the Second Sale Contract through Wansdown's motion to approve the Second Sale Contract on June 5, 2020 [*see* 1075 ECF No. 1 at 35 of 75]; or it may have requested assurance

42

after the sale had been completed on August 5, 2020 [*see* 1075 ECF No. 1 at 36 of 75].  On a motion to dismiss pursuant to Rule 12(b)(6), such ambiguity as to whether a defense exists must be resolved in favor of the plaintiff.  *See Geo Grp., Inc. v. Cmty. First Servs., Inc.*, No. 11-CV-1711, 2012 WL 1077846, at *6 (E.D.N.Y. Mar. 30, 2012) ("On a 12(b)(6) motion, . . . ambiguities must be resolved in favor of the non-movant[.]").  Therefore, purposes of this discussion, the Court will assume that both 29 Beekman's request and Wansdown's subsequent refusal post-dated the Confirmation Order.

Even with the benefit of that assumption, however, 29 Beekman's claim is still barred by the Confirmation Order because 29 Beekman had more than enough information to put it on notice that it could and should have raised any issues concerning Section 51(b) and 29 Beekman's treatment under the Revised Second Plan prior to or during the Confirmation Proceedings.  As the Complaint alleges, "[b]y motion dated June 5, 2020, Wansdown announced that it had 'negotiated and entered into a Sale Contract with the Purchaser for a purchase price of $11,500,000 (without any financing contingency), subject to higher and better offers pursuant to bidding procedures that are approved by the Court."  [1075 ECF No. 1 at 35–36 of 75; *see generally* Main ECF No. 102].  Thus, by June 5, 2020, at the latest, 29 Beekman was on notice that Wansdown was pursuing a sale of the Property for at least $11,500,000 and that, if said sale was completed, 29 Beekman may have had a claim to at least $820,000 under Section 51(b).  [1075 ECF No. 1 at 50 of 75].

Moreover, on June 9, 2020, Wansdown filed its Second Plan, which provided that, "[a]s part of the Sale Transaction under the Plan [i.e., the Second Sale], and in order to ensure consummation of the Plan, the Confirmation Order shall contain [certain] findings of fact and conclusions of law," including "that no cause of action exists . . . with respect to the sale of the Property to the Purchaser."  [Main ECF No. 105 at 13].  The Second Plan also provided that, with certain exceptions not applicable here, "[o]n the Effective Date . . . each Executory Contract and

Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code." [Main ECF No. 105 at 18]. Thus, by June 9, 2020, at the latest, 29 Beekman was on notice that any claims it might have under the Section 51(b) Liquidated Damages Provision could be affected—and, quite possibly, eliminated—if the plan were confirmed.

Wansdown put 29 Beekman on further notice of this possibility on June 16, 2020, when Wansdown filed its Revised Second Plan containing the same language [Main ECF No. 113 at 13, 18], and again on July 14, 2020, when Wansdown filed its proposed plan confirmation order, which, in addition to "approv[ing] and confirm[ing]" the language of the plan, provided that "[t]he transfer of the Property to the Purchaser will relieve the Debtor from any liability occurring, arising from, or relating to the Property after the transfer." [Main ECF No. 127 at 13, 15]. Indeed, the proposed confirmation order also included, as an explicit finding, that "[a] reasonable opportunity to object or be heard with respect to the sale of the Property under the Plan ha[d] been afforded to all interested persons and entities." [Main ECF No. 127 at 5]. Therefore, well in advance of the Confirmation Hearing, 29 Beekman was thoroughly on notice of the risks to any Section 51(b) liquidated damages claim it might have had. Even with this notice, 29 Beekman chose not to raise the issue in any form—or even appear at all—during the Confirmation Hearing. [*See generally* Main ECF No. 156]. Moreover, because the Revised Second Plan is "substantially funded by the net sale proceeds of the Sale Transaction" [Main ECF No. 113 at 13], stripping $820,000 of those proceeds from Wansdown's estate would "impair . . . the effectiveness" of the Plan. *Arcapita Bank*, 520 B.R. at 28. Therefore, and because 29 Beekman had the information necessary to raise the issue during the Confirmation Proceedings but chose not to, the fourth element of *res judicata* is satisfied as to the third cause of action in the 1075 Complaint.

D.     Even if *Res Judicata* Did Not Bar the Remaining Claims, the Defendants' Other
       Arguments Provide an Independent Basis for Dismissal of Many of 29 Beekman's
       Claims

The Court's decision regarding the Defendants' *res judicata* arguments is sufficient, on its

own, to warrant dismissal of the Complaint in its entirety.  Therefore, the Court need not reach the

Defendants' other arguments in favor of dismissal.  The Court notes, however, that many of those

arguments are meritorious and provide an independent basis for dismissal of 29 Beekman's claims,

with the possible exceptions of claims against Golsorkhi based on the Letter Agreement and breach

of contract claims against Wansdown based on an alleged breach of the Section 51(b)

Representation.

1.     *29 Beekman's Claims Sounding in Fraud Cannot Survive*

For example, 29 Beekman's claims sounding in fraud—i.e., the first, second, and fourth

causes of action in the 1075 Complaint, and the second cause of action in the 1063 Complaint—

fail because 29 Beekman has failed to plead at least one (and possibly more) of the essential

elements of a fraud claim.  "To prove fraud under New York law [which the parties appear to

assume applies here], 'a plaintiff must show that (1) the defendant made a material false

representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff

reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such

reliance.'"  *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir.

1996) (quoting *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d

146, 153 (2d Cir. 1995)).  Without commenting on the first three elements, the Court observes that

29 Beekman has not alleged (and cannot allege) that it suffered damage as a result of its reliance

on any alleged misstatement.

"To establish causation, plaintiff must show both that defendant's misrepresentation

induced plaintiff to engage in the transaction in question (transaction causation) and that the

misrepresentations directly caused the loss about which plaintiff complains (loss causation)." *Laub v. Faessel*, 297 A.D.2d 28, 31 (N.Y. App. Div. 1st Dep't 2002) (citations omitted).  "Loss causation is the fundamental core of the common-law concept of proximate cause:  An essential element of the plaintiff's cause of action . . . is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered."  *Id.*  Because, as discussed at length above, it was "blatantly obvious" to 29 Beekman that the Section 51(b) Representation—the only alleged misrepresentation forming the basis for the fraud claims—on December 31, 2019, 29 Beekman had ample time to avoid any harm that it perceived might result from that falsity, including, for example, by raising an objection before or during the Sale Hearings, or by appealing the Sale Order before it became non-appealable.  29 Beekman's failure to do so constituted a break in the causal link between any alleged falsity and any alleged damages suffered by 29 Beekman.  Thus, 29 Beekman cannot plead loss causation, and its fraud claims cannot survive.

29 Beekman's inability to plead loss causation is also fatal to its claim for aiding and abetting fraud—i.e., the second cause of action in the 1075 Complaint—because the first essential element of a claim for aiding and abetting liability is the existence of "an underlying fraud." *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 482 (S.D.N.Y. 2018).  Because 29 Beekman cannot plead loss causation, 29 Beekman cannot plead the existence of an underlying fraud, and its aiding and abetting claim necessarily fails.  Even assuming that 29 Beekman intended to suggest that any alleged misrepresentations concerning Blank Rome's representation of Pelmadulla could be considered the basis for a claim of aiding and abetting *Wansdown's* alleged fraud (which, as noted above, it cannot), any claim of fraud premised on those alleged misstatements also fail because 29 Beekman cannot establish the third or fourth essential elements of fraud—namely, that 29 Beekman reasonably relied on the alleged misrepresentations and

suffered damages resulting from that reliance.   Any alleged misrepresentations about Blank

Rome's representation of Pelmadulla (or lack thereof) were made in the course of the bankruptcy

proceedings in this Court, *after* the Sale Contract had been executed.   Thus, 29 Beekman could not

have reasonably relied on those non-existent representations when it entered into the Sale Contract,

and it could not have suffered any damages as a result of that non-existent reliance.   Therefore,

even setting aside *res judicata*, none of 29 Beekman's claims sounding in fraud can survive.

### 2.   *29 Beekman's Claim for Alter Ego Liability Cannot Survive*

Additionally, 29 Beekman's claim for alter ego liability against Blank Rome and

Golsorkhi—i.e., its third cause of action in the 1075 Complaint—fails because, as Blank Rome

and Golsorkhi point out, 29 Beekman has failed to identify any applicable law that would entitle

it to a claim of alter ego liability against a the law firm and managing director of a Netherland

Antilles company under either Netherland Antilles or New York law, or, indeed, even failed to

identify which law arguably applies.   [1075 ECF No. 10-1 at 29–33; 1075 ECF No. 9-1 at 7–8].

Indeed, in its opposition to the Motions to Dismiss, 29 Beekman does not purport to cite a single

legal authority under which it would be entitled to a finding of alter ego liability against a

company's law firm and managing director [*see generally* 1075 ECF No. 12], and 29 Beekman

did not raise the argument once during the November 21 Hearing [*see generally* 1075 ECF No.

18].   Instead, all 29 Beekman argues in its briefing is that the 1075 Complaint contains allegations

that "Wansdown will be unlikely to have sufficient assets to pay the amounts it owes to 29

Beekman under Section 51b of the Contract," "Wansdown's inability to make such payment is on

account of the fraudulent conduct perpetrated by Blank Rome and Golsorkhi," and "Golsorkhi, as

the sole officer and Managing Director of Wansdown, and Golsorkhi's counsel, Blank Rome (also

acting as counsel to Wansdown), dominated and controlled the decisions and activities of

Wansdown during the relevant period, and thus are the alter egos for Wansdown."   [1075 ECF No.

12 at 38 (quoting 1075 ECF No. 1 at 49 of 75)].  29 Beekman fails to explain why these allegations

would be sufficient to survive a Rule 12(b)(6) motion even if 29 Beekman had identified some law

entitling it to relief.  Therefore, even setting aside *res judicata*, this claim cannot survive.

### 3.   *29 Beekman's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Cannot Survive*

Finally, 29 Beekman's claim for breach of the implied covenant of good faith and fair

dealing—i.e., its third cause of action in the 1063 Complaint—cannot survive because it is

impermissibly duplicative of its breach of contract claims.  "Under New York law, a claim for

breach of an implied covenant of good faith and fair dealing does not provide a cause of action

separate from a breach of contract claim.  . . .  A claim for breach of the covenant of good faith

and fair dealing will be duplicative of a breach of contract claim where they are based on the same

allegations or where the same conduct is the predicate for both claims."  *Spread Enterprises, Inc.

v. First Data Merch. Servs. Corp.*, No. 11-CV-4743, 2012 WL 3679319, at *3 (E.D.N.Y. Aug. 22,

2012) (citations omitted).  "A cause of action to recover damages for breach of the implied

covenant of good faith and fair dealing cannot be maintained where the alleged breach is

intrinsically tied to the damages allegedly resulting from a breach of the contract.  *Deer Park

Enterprises, LLC v. Ail Sys., Inc.*, 57 A.D.3d 711, 712 (N.Y. App. Div. 2d Dep't 2008) (quotation

marks and citation omitted).

Here, the third cause of action centers around the Sale Contract—specifically, "contract

negotiations," "protection[s] in the contract," and "the significant financial benefits of the

contract" [1063 ECF No. 3 at 19–20]—which is also the contract at issue in the breach of contract

claim.  29 Beekman argues that the 1063 Proposed SAC "outlines a series of activities that makes

clear that it was Debtor's *post contractual activities* in not disclosing the Pelmadulla claim, moving

for a 363 Sale, and not agreeing to pay the Mansion Tax caused by its own behavior, that caused

29 Beekman to have to incur the Mansion Tax, not any provision in the Contract." [1056 ECF No. 126 at 18].  But even if the Court were to grant the Motion to Amend (which, as discussed below, it does not), the alleged breach of the implied covenant of good faith and fair dealing would still be "intrinsically tied to the damages allegedly resulting from a breach of the contract"—i.e., allegedly resulting from the alleged falsity of the Section 51(b) Representation.  Therefore, even setting aside *res judicata*, this claim cannot survive.

E.      *Conclusion*

For the reasons discussed above, the Motions to Dismiss are granted, and all of 29 Beekman's claims in the 1075 Complaint and the 1063 Complaint are dismissed.

## VI.     **The Motion to Amend is Denied**

A.      The Proposed Amendments to the Existing Causes of Action Do Not Change the Outcome of the Motion to Dismiss the 1063 Complaint

As noted, the 1063 Proposed SAC contains certain proposed superficial edits to the existing causes of action in the 1063 Complaint.  For example, the subtitle of the first cause of action against Wansdown for breach of the Section 51(b) Representation has been changed from "Misrepresentation of Sufficiency of Sale Proceeds to Satisfy All Claims against Debtor" to "Declaration that 29 Beekman Did Not Have to Close Under the Contract Because, at Closing and at all relevant times, the Proceeds of the Sale of the Property Were Not Sufficient to Satisfy All Claims against Debtor." [1056 ECF No. 100-2 at 19].  Similarly, the title of the third cause of action against Wansdown for "Breach of Good Faith and Fair Dealing" has been changed to "Breach of Good Faith and Fair Dealing *Pertaining to the Mansion Tax*" [*id.* at 22] (emphasis added), and the title of the fourth cause of action against Wansdown, titled "Declaration that Debtor is Bound by the Sworn Affidavit of its Managing Director that the Closing Date was 45

Days After the Confirmation Order" has had "Upon Which Declaration Buyer Relied" appended to the end of it [*id.* at 23]. Neither these edits nor any of the other similarly minor edits substantively change the existing causes of action, so the Court's analysis of the Motion to Dismiss the 1063 Complaint is unaffected by them. Therefore, because the Court has dismissed the existing causes of action for the reasons discussed above, the proposed amendments thereto would be futile, and the Motion to Amend is denied as to those proposed amendments.

B.    The Motion to Amend by Adding New Causes of Action Is Denied Because of 29 Beekman's Bad Faith and Dilatory Conduct

Wansdown argues that the Motion to Amend "is in actuality" a "motion to reargue matters already decided in the First Adversary" and should be denied because of 29 Beekman's bad faith and dilatory conduct, which, Wansdown argues, will cause undue prejudice to the Defendants. [1056 ECF No. 112 at 24–30]. According to Wansdown, the Motion to Amend is "part of [a] deliberate litigation strategy of delay implemented in this instance by its litigation decision to split its claims to allow it to litigate and then relitigate issues." [1056 ECF No. 112 at 28]. Wansdown also asserts, on a claim-by-claim basis, that "the substance of the claims and allegations that are the subject of the SAC are not 'new' and [29] Beekman has already addressed them or has had ample opportunity to address them in the [1056 Proceeding]." [1056 ECF No. 112 at 28]. The Court agrees.

"In gauging prejudice [for purposes of deciding a motion to amend], [courts] consider, among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quotation marks and citation omitted). "Courts have previously held that denial of leave to amend is proper when a party attempts to assert new facts or theories that it could have raised sooner." *United States v.*

*Pokerstars*, No. 11-CV-2564 (KMW), 2016 WL 4411421, at *6 (S.D.N.Y. Aug. 19, 2016)

(citations omitted), *aff'd sub nom. United States v. Cardroom Int'l, LLC*, 726 F. App'x 98 (2d Cir.

2018).   Additionally, "[w]hen the moving party has had an opportunity to assert the amendment

earlier, but has waited until after judgment before requesting leave, a court may exercise its

discretion more exactingly."   *Ruotolo*, 514 F.3d at 192 (quotation marks and citation omitted).

Similarly, courts have denied leave to amend where the movant sought leave only after case

developments reveal a weakness in the movant's case.   *See, e.g.*, *Lee v. Regal Cruises, Ltd.*, 916

F. Supp. 300, 304 (S.D.N.Y. 1996) (denying leave to amend because the plaintiffs sought leave to

assert new causation theories in the complaint "[o]nly when defendants moved for summary

judgment—and demonstrated that plaintiffs were in serious danger of losing the case," which

"suggest[ed] that the request for leave to amend reflect[ed] an evolutionary development in

plaintiffs' case that falls under the heading of bad faith"), *aff'd*, 116 F.3d 465 (2d Cir. 1997).

Here, the proposed fifth and sixth causes of action center on Wansdown's alleged

knowledge—whether actual or imputed—of the Pelmadulla Claim.   [1056 ECF No. 100-2 at 23–

25].   To the extent these claims are not based on the Pelmadulla Emails, 29 Beekman could have

pled them in defense of the 1056 Proceeding, or it could have included them in its original

complaint when it first filed the 1063 Proceeding on March 25, 2020, or it could have included

them in its amended 1063 Complaint filed on April 23, 2020, or it could have moved to amend the

1063 Complaint to include the claims at any time thereafter.   Indeed, 29 Beekman raised the issue

of Wansdown's knowledge in the original complaint in the 1063 Proceeding [1063 ECF No. 1 at

15 ("The Debtor knew its material misrepresentation was false when made[.]")], in its amended

1063 Complaint [1063 ECF No. 3 at 19 ("Debtor knew about the Sole Shareholder claim long

prior to executing the Contract.")], and in various other proceedings since then [*e.g.*, 1056 ECF

No. 31 at 4:17–19 (transcript of an April 23, 2020 hearing during which counsel for 29 Beekman

51

argued that "the knowledge of the sole shareholder is imputed as a matter of law to the company")].
To the extent that the claims are based on the Pelmadulla Emails, 29 Beekman could have sought
leave to amend the 1063 Complaint and add the claims at any time after it received those emails
on July 24, 2020.  Indeed, 29 Beekman filed a letter informing the Court of the Pelmadulla Emails
and arguing that "Pelmadulla's knowledge of its claim is directly attributable to Debtor anyway,
as a matter of black letter law" on July 27, 2020 [1056 ECF No. 55 at 1], and on November 3,
2020, 29 Beekman initiated the state court action that would become the 1075 Proceeding, alleging
that the Defendants had knowledge of the Pelmadulla Claim, including based on the Pelmadulla
Emails [1075 ECF No. 1 at 38–42 of 75].  Despite all of this, 29 Beekman did not file the Motion
to Amend until May 27, 2022, almost two years after receiving the Pelmadulla Emails and more
than two years after first raising the issue of Wansdown's knowledge in the 1063 Proceeding.

Similarly, 29 Beekman could have brought its proposed seventh cause of action for
Wansdown's alleged breach of the Sale Contract's Liquidated Damages Provision [1056 ECF No.
100-2 at 25] as soon as Wansdown allegedly refused 29 Beekman's request for liquidated damages.
The 1063 Proposed SAC, like the 1075 Complaint, does not specify when this alleged refusal
occurred [*see* 1056 ECF No. 100-2 at 25], but the refusal must have occurred before November 3,
2020 at the absolute latest, because that is the date on which 29 Beekman filed the 1075 Complaint,
which contained the same cause of action but against Blank Rome and Golsorkhi in their alleged
capacity as "alter egos" of Wansdown [1075 ECF No. 1 at 48–49 of 75].  29 Beekman offers no
explanation for its decision to file a brand new action in state court against Blank Rome and
Golsorkhi yet to wait an additional year and a half before moving to amend the 1063 Complaint to
include the same cause of action against Wansdown.

Finally, 29 Beekman could have brought its proposed eighth cause of action for breach of
Section 33 of the Sale Contract as a defense in the 1056 Proceeding, as a cause of action when it

initiated the 1063 Proceeding on March 25, 2020, or at any time thereafter.  Indeed, 29 Beekman

knew all of the facts giving rise to this cause of action before it initiated the 1063 Proceeding; the

only new developments on this issue since then have been the Court's October 5, 2020 Summary

Judgment Decision, which noted that neither party exercised its rights under Section 33 [1056 ECF

No. 60 at 4 n.3], and the January 6, 2021 Reconsideration Decision denying reconsideration of that

decision [1056 ECF No. 78].  Again, 29 Beekman offers no explanation for its more than two-year

delay.

In its reply brief, 29 Beekman largely ignores Wansdown's arguments regarding bad faith

and dilatory conduct, instead focusing on the merits of the proposed new causes of action.  [1056

ECF No. 124 at 10–16].  The only response that appears to be in any way targeted at Wansdown's

bad faith argument is 29 Beekman's position that the Court's prior rulings are not binding because

they were rendered without knowledge of the Pelmadulla Emails, and that, "[h]ad Debtor disclosed

the notice and warning it had of the Pelmadulla claim, 29 Beekman would have revealed to the

Court during summary judgment briefing that Debtor always knew that they could not meet the

critical Condition Precedent to closing, even prior to Contract formation," and the Court "would

have had to grant 29 Beekman summary judgment."  [1056 ECF No. 124 at 10–11].  In support of

this argument, 29 Beekman relies almost exclusively on case law dealing with the law of the case

doctrine [1056 ECF No. 124 at 11–12], and, indeed, the argument sounds more in law of the case

than it does in bad faith and dilatory conduct under Rule 15(a).

Even if 29 Beekman's cited legal authority could be interpreted as aimed at rebutting an

assertion of bad faith and dilatory conduct (which the Court considers a strained interpretation), it

fails for the simple reason that, by 29 Beekman's own account, it is contrary to established fact.

According to 29 Beekman, Blank Rome produced the Pelmadulla Emails on July 24, 2020.  [1056

ECF No. 124 at 1].  On July 27, 2020, just three days later, 29 Beekman filed a letter in the 1056

Proceeding informing the Court of the Pelmadulla Emails, which the letter described as "emails that further reveal that Pelmadulla put Debtor on notice that Pelmadulla was a creditor because of outstanding loans it made to Debtor."  [1056 ECF No. 55 at 1].  Thus, 29 Beekman informed the Court of the Pelmadulla Emails one day before the July 28, 2020 hearing on the motions for summary judgment (during which 29 Beekman had the opportunity to raise arguments based on the Pelmadulla Emails with the Court) [1056 ECF No. 59], more than two months before the Court issued the Summary Judgment Decision on October 5, 2020 [1056 ECF No. 60], almost three months before 29 Beekman filed its October 19, 2020 motion for reconsideration of the Summary Judgment Decision [1056 ECF No. 62], and more than five months before the Court issued the Reconsideration Decision on January 6, 2021 [1056 ECF No. 78].  Even if 29 Beekman felt that the Court did not give the July 27, 2020 letter the consideration it deserved, 29 Beekman had almost half a year more to raise the issue with the Court.  29 Beekman chose not to do so, and it must now live with the consequences of that choice.

Thus, it makes no difference that "[t]he proposed second amended complaint contains significant discussion and reliance on the concealed Pelmadulla Emails" [1056 ECF No. 124], because 29 Beekman has offered no justification for its decision to sit on those emails for almost two years before finally moving to amend the 1063 Complaint, after Wansdown and the Court have invested substantial time and resources seeking to resolve the parties' dispute.  Taken on its own or in the broader context of 29 Beekman's repeated decisions to initiate new proceedings in piecemeal fashion instead of presenting its arguments in existing proceedings, 29 Beekman's unexplained delay in filing its Motion to Amend "falls under the heading of bad faith" and dilatory conduct.  *Lee*, 916 F. Supp. at 304.  Therefore, the Motion to Amend is denied.

C.    <u>The Court Need Not Reach Wansdown's Futility Arguments</u>

The Court's decision regarding Wansdown's bad faith arguments is sufficient, on its own, to warrant denial of the Motion to Amend.  Therefore, the Court need not and does not reach Wansdown's arguments regarding the futility of the 1063 Proposed SAC.

D.    *Conclusion*

For the reasons discussed above, the Motion to Amend is denied.

## CONCLUSION

For the reasons stated above, the Court **grants** the Motions to Dismiss and **denies** the Motion to Amend.  The parties are to settle an order reflecting that decision.


Dated: New York, New York
       March 31, 2023                     *s/ David S. Jones*
                                     Hon. David S. Jones
                                     United States Bankruptcy Judge